**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Appellant,**

v.

**USAIR, INC.**

No. 91–3441.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1992.

Decided March 31, 1992.

Edward J. Gilmartin (argued), Ass'n of Flight Attendants, AFL–CIO, Washington, D.C., for appellant.

Thomas E. Reinert, Jr. (argued), Morgan, Lewis & Bockius, Washington, D.C., for appellee.

Before: COWEN, NYGAARD, Circuit Judges, and GARTH, Senior Circuit Judge.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

The Association of Flight Attendants, AFL–CIO (the Union), appeals from the district court's order granting summary judgment in favor of appellee USAir, Inc. and directing that certain evidence be admitted at the grievance arbitration of a former USAir flight attendant. The Union appeals that portion of the order directing

admission of the evidence, contending that questions of admissibility are procedural and to be decided by the arbitrator, not the courts. We agree and will reverse that portion of the district court's order.

## I.

The facts are not in dispute. "Doe", a flight attendant employed by USAir was charged with possession of a controlled substance, unlawful delivery, possession with intent to deliver, and criminal conspiracy.[1] He pleaded guilty to one count of unlawful possession of cocaine. Under Pennsylvania law, a guilty plea to a nonviolent drug charge may be treated as a conditional plea and be held in abeyance until the defendant successfully completes a drug treatment program. 35 Pa.S.A. § 780–118. The program is known as Probation Without Verdict (PWV).[2] The state court issued a PWV Order specifying that Doe pay the cost of prosecution, a $500 fine, and complete six months of probation. Doe complied with all conditions of his probation and paid all costs and fines. Pursuant to 18 Pa.C.S.A. § 9122 and 35 Pa.C.S.A. § 780–119, the court ordered that all records pertaining to his prosecution and arrest be expunged and destroyed in October 1989, six months after the PWV.

The Union is the exclusive representative of flight attendants employed by USAir. The Union and USAir are parties to a collective bargaining agreement covering the terms and conditions of employment for USAir's flight attendants. Conforming to section 204 of the Railway Labor Act, 45 U.S.C. § 184, the bargaining agreement sets forth detailed procedures for resolving disputes arising between the Union and USAir. It provides a four-step grievance procedure culminating in binding arbitration before a five member System Board of Adjustment. Doe was a member of the Union.

When USAir learned of Doe's arrest, it suspended him without pay until the criminal charges against him were resolved. After the court placed Doe in the PWV program, USAir terminated his employment retroactive to the date of his suspension. Doe immediately filed a grievance with USAir under the terms of the bargaining agreement seeking to be reinstated. His grievance was denied at the first two levels of the four-step grievance procedure. At the third level, in August 1989, Doe represented to the four member board that his criminal record was soon to be expunged. At about the same time, the board deadlocked on his grievance and the events following brought the parties into court before they reached the fourth and final step in the arbitration process.

Throughout this arbitration Doe was represented by Ben Elliott, a Union staff attorney, and by John Havey, a private practitioner. USAir was represented by John Hedblom. After the four member board deadlocked, Hedblom spoke with Elliott and requested a prompt hearing before the System Board so he could present evidence of Doe's arrest and prosecution before the court expunged his records. In response, Elliott orally agreed to proceed in the same manner as the parties had done in another, but identical case (the Malinic case): that is, the parties would stipulate to the facts of the grievant's arrest and prosecution, preserving this evidence for arbitration. Hedblom agreed to postpone the grievance proceedings for several months, relying upon his agreement with Elliott. The record does not indicate that either Doe or Havey agreed to the stipulation or to permit Doe's record to be introduced into evidence at his arbitration. USAir represented at oral argument that it entered the stipulation because it knew that using Doe's PWV without his consent would violate Pennsylvania law. Indeed, Title 35

1. Pennsylvania law prohibits the use of the flight attendant's name since the records of his Probation Without Verdict have been expunged. 35 Pa.S.A. § 780–119(b).

2. Because a Probation Without Verdict has the effect of a conviction for only six months after

the PWV order is entered by the court (and can have no legal effect thereafter), we refer to this adjudication as a "PWV" rather than a "conviction."

section 780–119(b) of Pennsylvania's Health and Safety Code provides that:

> Any expunged record of arrest or prosecution shall not hereafter be regarded as an arrest or prosecution for the purpose of any statute or regulation or license or questionnaire or any civil or criminal proceeding or any other public or private purpose. No person shall be permitted to learn of an expunged arrest or prosecution, or of the expunction, either directly or indirectly. Any person, except the individual arrested or prosecuted, who divulges such information in violation of this subsection shall be guilty of a summary offense[.]

Thus, unless the record is divulged by Doe, it would be a violation of Pennsylvania law to consider his expunged arrest record in his grievance proceeding. See *Warren County School District v. Carlson*, 53 Pa. Cmwlth. 568, 418 A.2d 810 (1980) (teacher's expunged record of a criminal prosecution for possession of marijuana was inadmissible at his termination hearing); See also *Commonwealth v. Armstrong*, 495 Pa. 506, 434 A.2d 1205 (1981) (unless State demonstrates overriding societal interest in retaining record of arrest, person who successfully completes an accelerated rehabilitative disposition program is entitled to have his record expunged).

Soon after the court expunged Doe's records, John Havey contacted Elliott and told him that Doe would not waive his rights under Pennsylvania law by entering into the stipulation. Instead, Doe intended to assert his statutory right of non-disclosure and did not want any evidence of his arrest or prosecution admitted at arbitration. Elliott informed Hedblom, who replied that this constituted a breach of their oral agreement. USAir then refused to arbitrate this grievance before the System Board.

In July 1990, the Union sued in the U.S. District Court seeking to compel USAir to arbitrate Doe's grievance. USAir counter-claimed, seeking declaratory relief. In its pleadings, USAir acknowledged that it was prepared to arbitrate the grievance but sought a declaratory judgment enforcing the oral agreement between the attorneys for the Union and USAir to admit evidence of Doe's PWV.[3]

On May 21, 1991 the U.S. Magistrate Judge submitted a Report and Recommendation concluding that the grievance "should proceed to arbitration preserving the right of USAir to introduce evidence of (Doe's) criminal conviction." The district court adopted the Report and Recommendation and granted USAir's motion for summary judgment.

## II.

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1337 because the matter was pleaded under the Railway Labor Act, 45 U.S.C. §§ 151–188. We have jurisdiction under 28 U.S.C. § 1291. The issue is whether the district court usurped the function of the arbitrator when it decided that evidence of the flight attendant's PWV should be admitted at the arbitration of the flight attendant's termination grievance. It is an issue of law and subject to plenary review. *West American Insurance Co. v. Park*, 933 F.2d 1236, 1238 (3d Cir.1991).

## III.

The Railway Labor Act was enacted to avoid any interruption to commerce or to the operation of any carrier engaged therein and to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. 45 U.S.C. § 151a. To further the Act's purpose, Congress placed great emphasis on negotiation and voluntary settlement rather than judicial resolution, 45 U.S.C.

---

**3.** USAir's pleadings also sought declaratory relief on the grounds that certain provisions of the Pennsylvania Controlled Substance Drug, Device and Cosmetic Act were preempted by the Railway Labor Act and/or the Federal Aviation Act, and that the Controlled Substance Drug, Device and Cosmetic Act directly restrained USAir's freedom of speech. These contentions are not before us in this appeal.

§ 152a; *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 724–25, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), and limited the parties' ability to resort to self-help before exhausting statutory remedies. *Burlington Northern R.R. Co. v. Bhd. of Maintenance of Way Employees,* 481 U.S. 429, 444–46, 107 S.Ct. 1841, 1850–51, 95 L.Ed.2d 381 (1987). Accordingly, the role of the federal courts in disputes under the Railway Labor scheme is limited. *See, e.g., SEPTA v. Bhd. of R.R. Signalmen,* 882 F.2d 778, 790 (3d Cir.1989).

▮ Under the Railway Labor Act, there is an important distinction between major and minor disputes. The distinction affects the extent to which the federal courts can become involved in a dispute. *Bhd. of R.R. Signalmen v. Burlington Northern R.R. Co.,* 829 F.2d 617, 619 (7th Cir.1987). Federal courts have broad powers to intervene in some major disputes, but the Act prohibits federal courts from becoming involved in minor disputes. 829 F.2d at 619–20.

Major disputes involve the formation and amendment of the contract between the employer and the labor union. This category of dispute

> relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement of where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

*Consolidated Rail Corporation (Conrail) v. Railway Labor Exec. Ass'n,* 491 U.S. 299, 109 S.Ct. 2477, 2490, 105 L.Ed.2d 250 (1989) (drug testing was minor rather than a major dispute.). The minor dispute category, in contrast,

> contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation

or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, *e.g.,* claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Conrail,* 491 U.S. at 303, 109 S.Ct. at 2480, quoting *Elgin, Joliet & Eastern Ry. v. Burley,* 325 U.S. at 723, 65 S.Ct. at 1290. This court has noted that "the definition of minor disputes has generally proven elusive," *SEPTA v. Bhd. of R.R. Signalmen,* 882 F.2d at 782, but "the distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing collective bargaining agreement." 882 F.2d at 782–83 (citations omitted). "Minor disputes do not involve fundamental changes in labor-management relations, but rather focus on whether a change is arguably comprehended within an already existing collective bargaining agreement." *Burlington Northern,* 829 F.2d at 619.

▮ The Magistrate, and USAir, considered the dispute over the admissibility of Doe's PWV to be "major" because the dispute could not be resolved by referring to an existing collective bargaining agreement. Appellants, on the other hand, characterize the dispute as "minor" because major disputes arise only in the context of negotiations over changes in or creation of collective bargaining agreements.

Both of these characterizations of the evidentiary dispute miss the mark. The dispute was not major, because major disputes, unlike the present dispute, "involve efforts to form or proposals to change collective bargaining agreements." *See Railway Labor Executives' Ass'n v. Pittsburgh & L.E. R.R.,* 845 F.2d 420 (3d Cir.1988), *vacated and remanded on other grounds,* 491 U.S. 490, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989). Such disputes simply do not concern individual employees and specific circumstances, as does the present dispute, but rather "involve changes in the rates of pay, rules, or working conditions that are currently part of existing collective bar-

gaining agreements." *General Committee of Adjustment, U.T.U. v. CSX R.R.,* 893 F.2d 584, 589 (3d Cir.1990). *See also Elgin, Joliet & Eastern R.R. Co. v. Burley,* 325 U.S. at 723, 65 S.Ct. at 1290. Even if, as USAir urges, we were to regard the agreement between Elliott and Hedblom as a contract between the parties, it involved those parties alone and in no way challenged the existing collective bargaining agreement between USAir and the Union. Disagreement over such a contract could therefore not be regarded as a major dispute.

Nor was the dispute minor. Minor disputes, unlike the present dispute, may be conclusively resolved through interpretation of an existing collective bargaining agreement, *see, e.g.,* 893 F.2d at 591. The existing collective bargaining agreement does not provide assistance in resolving this dispute. Hence, admission of Doe's PWV cannot be conclusively resolved by reference to the collective bargaining agreement and the dispute is therefore not a minor dispute.

Instead, this dispute is an evidentiary, or procedural question and wholly ancillary to the minor dispute concerning Doe's dismissal. As such, it is governed by the teaching of *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) which provides, as discussed below, that procedural issues such as the evidentiary issue here must be resolved by the arbitrator, to whom the district court correctly assigned the task of resolving the underlying minor dispute concerning Doe's dismissal.

## IV.

■ Generally, in railway and airline disputes, as in all other labor disputes, the role of the courts are particularly circumscribed when the parties have agreed to submit their disputes to binding arbitration. Here, the court's function is to decide the preliminary question of whether a collective bargaining agreement imposes a duty on the parties to arbitrate a particular grievance. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Bokunewicz v. Purolator Products, Inc.,* 907 F.2d 1396, 1400 (3d Cir.1990). Beyond this, the court usurps the exclusive function of the arbitrator when it ventures to decide procedural matters, or the merits of a grievance arising under the collective bargaining agreement. *See, e.g., AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1419; *Shaffer v. Mitchell Transport, Inc.,* 635 F.2d 261, 266 (3d Cir.1980).

■ Once the parties are obligated to submit a dispute to arbitration, then "procedural" questions growing out of the dispute and bearing on its final disposition are to be left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. at 557–58, 84 S.Ct. at 918.

The benefits of the doctrine of "procedural arbitrability" are that: it prevents the duplication of efforts between court and arbitrator; it avoids unnecessary delay in fields where the prompt resolution of labor disputes is of paramount importance; and it promotes arbitration as the dispute resolution mechanism of choice in the labor field. *Id.* We have consistently followed the rule of procedural arbitrability announced in *John Wiley. Becton Dickinson & Co. v. District 65, United Auto Workers,* 799 F.2d 57, 59–60 (3d Cir.1986); *Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace, Inc.,* 759 F.2d 1094, 1097 (3d Cir.1985); *Chauffeurs, Teamsters & Helpers, Local 765 v. Stroehmann Bros. Co.,* 625 F.2d 1092, 1093–94 (3d Cir.1980).

Consequently, whether the district court usurped the exclusive function of the arbitrator by deciding the evidentiary dispute involves a two-fold inquiry: First, are the parties obligated to submit those termination grievances to arbitration; second, is the admissibility of evidence question to be decided by the arbitrator? The answers to both are found in the collective bargaining agreement and are in the affirmative.

## V.

■ Clearly, the arbitrator need not go outside the terms of the collective bargain-

ing agreement to decide whether or not the flight attendant should be reinstated. Section 19 of the bargaining agreement provides:

Any flight attendant ... who has a grievance concerning any action of the Company affecting them shall be entitled to have such grievance handled in accordance with the procedure established in this Section for investigating and hearing cases of discipline or dismissal.

The district court concurred that the termination grievance is subject to arbitration, and it adopted the magistrate's recommendation that the matter proceed to arbitration before the System Board. Neither party challenges this ruling.

Moreover, it is equally clear that the bargaining agreement likewise provides that the arbitrator will determine evidence issues according to orderly procedures.

Evidence may be presented either orally or in writing, or both.

On request of individual members of the Board, the Board may, by a majority vote, or shall at the request of either the Association representatives or the Company representatives thereon, summon any witnesses who are employed by the Company and who may be deemed necessary by the parties to the dispute, or by either party, or by the Board itself, or by either group or representatives constituting the Board.

. . . . .

Decisions of the Board in all cases properly referable to it shall be final and binding upon the parties hereto.

The essence of the arbitral function is processing evidence to find facts and determine the grievance issues. Intuitively, if the arbitrators are to receive evidence it must be up to them to decide issues of relevance, or as here, admissibility of evidence. *International Union, UAW v. Kraft Foods, Division of Kraftco*, 409 F.Supp. 559, 562 (E.D.Pa.1976) ("[T]he arbitrator has the authority to control the proceedings and the admission of evidence.")

In *John Wiley*, the Supreme Court cautioned against fragmenting labor disputes into "substantive" and "procedural" questions.

We think that labor disputes of the kind involved here cannot be broken down so easily into their "substantive" and "procedural" aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.

*John Wiley*, 376 U.S. at 556–557, 84 S.Ct. at 918.

The court concluded:

[W]e think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural agreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.

*John Wiley*, 376 U.S. at 559, 84 S.Ct. at 919.

We believe that what is at issue here is procedural and evidentiary. Whether the agreement between Elliott and Hedblom is enforceable upon Doe, or alternatively contravenes his statutory rights is a predicate to and should be decided along with the admissibility of Doe's PWV in the arbitration hearing.

We express no opinion on either whether the stipulated agreement is enforceable against Doe, or whether the PWV is admissible, only that the district court erred by deciding an evidentiary matter properly subject to the procedural control of the arbitrator. *See Brotherhood of Railway Carmen, AFL–CIO v. Atchison, Topeka, and Santa Fe Railway Co.*, 956 F.2d 156 (7th Cir.1992) (improper for the district court to determine that the railroad had waived its right to present evidence.)

## VI.

In summary, we will reverse that portion of the district court's order preserving USAir's right to introduce evidence at Doe's grievance arbitration. We will affirm the district court's summary judgment in favor of USAir, compelling the arbitra-

tion of this dispute, and will remand to the district court for it to enter an order remanding the cause to the System Board of Adjustment.