**In re CONTINENTAL AIRLINES,
INC., et al., Debtors.**

**Nos. 90–932 (MFW) to 90–984(MFW).**

United States Bankruptcy Court,
D. Delaware.

Dec. 17, 2003.

Brendan Linehan Shannon, Joseph M. Barry, Robert S. Brady, Young, Conaway, Stargatt & Taylor, Paul P. Welsh, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for debtors.

Brian A. Sullivan, Werb & Sullivan, Wilmington, DE, Robert Drake Wilcox, Robert D. Wilcox, P.A., Jacksonville, FL, for defendant.

**1.** This opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Amended Motion of Continental Airlines, Inc. ("Continental") seeking an Order compelling the Eastern Arbitration Group, Inc., and its individual members ("the EAG"), and the Eastern Pilots Merger Committee and its individual members ("the EPMC") (collectively, "the Respondents") to comply with Orders of this Court and the Appellate Courts, finding the Respondents in civil contempt of court and imposing sanctions on the Respondents. After considering the arguments of both parties, prior findings of this Court and prior rulings of the Third Circuit in this case, we conclude that Continental's Motion must be denied for the following reasons.

### I. *FACTUAL BACKGROUND*

On February 23, 1986, Eastern Airlines ("Eastern") and its pilots' union, the Air Lines Pilot Association ("ALPA") ratified a collective bargaining agreement ("the CBA"). On February 24, 1986, Texas Air Corporation, the parent of Continental acquired Eastern. ALPA asserted that the acquisition was a merger requiring the integration of the Eastern and Continental pilot seniority lists pursuant to the CBA. When Eastern and Continental refused to bargain, ALPA initiated arbitration.

In March, 1989, Eastern filed bankruptcy and asserted that the automatic stay precluded ALPA from proceeding with the arbitration. The Second Circuit Court of Appeals disagreed and held that the automatic stay did not stay the continuation of the arbitration. *In re Ionosphere Clubs,*

7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

*Inc.*, 922 F.2d 984 (2d Cir.1990). Thereafter, ALPA continued the arbitration seeking the integration of the Eastern and Continental pilot seniority lists and back pay.

In December 1990, Continental filed bankruptcy in this Court. ALPA and certain individual Eastern pilots filed protective proofs of claims asserting that, as a result of Continental's acquisition of Eastern, the Eastern pilots were entitled to specific performance of seniority rights granted them under the CBA. Continental objected to these claims and sought a declaration that the claims were general unsecured pre-petition claims compensable by an award of monetary damages, which were thus dischargeable in bankruptcy. ALPA disagreed and asserted that the pilots were entitled to seniority integration pursuant to the CBA and that only the arbitrator had jurisdiction to determine the appropriate remedy. In February 1993, the Bankruptcy Court sustained Continental's objection to the ALPA claims and classified them as general unsecured obligations.

In April 1993, the Bankruptcy Court entered an order confirming Continental's Plan of Reorganization ("the Confirmation Order"). The Confirmation Order concluded that any claim under the CBA gave rise to a right of payment dischargeable in bankruptcy and that no right to equitable relief was available. Consequently, the Confirmation Order enjoined the arbitration proceeding.

ALPA and the individual Eastern pilots appealed. While the appeal was pending, ALPA entered into a settlement agreement with Continental that was accepted by approximately two-thirds of the Eastern Pilots. The pilots who chose not to accept the settlement ("the Remaining Claimants") continued the appeal. Subsequently, the District Court affirmed the

Confirmation Order except with respect to the injunction of the arbitration proceeding. *In re Continental Airlines, Inc.*, No. 93–163 (D.Del. Nov. 29, 1995). Both parties appealed to the Third Circuit.

On August 29, 1997, the Third Circuit issued its decision affirming the District Court. The Court held that the Eastern pilots' claims for seniority integration could be converted into money damages. *In re Continental Airlines*, 125 F.3d 120 (3d Cir.1997) (*Continental I*). Consequently, the Court concluded that those claims could be treated and discharged in Continental's Plan of Reorganization. *Id.* at 135–36. The Court also held, however, that the Bankruptcy Court could not enjoin the arbitration proceeding because Continental had not rejected the CBA in accordance with section 1113. *Id.* at 136–38. A Petition for Writ of Certiorari was denied by the Supreme Court. *LLP Claimants v. Continental Airlines*, 522 U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998).

On October 12, 1999, some of the Remaining Claimants commenced a class action adversary proceeding in Continental's bankruptcy case ("the Baldridge Class Action"). The Baldridge Class Action sought a determination that the one-year cap in section 502(b)(7) of the Bankruptcy Code did not apply to their claims under the CBA. By Order dated February 3, 2000, the Baldridge Class Action was certified as a class. *Baldridge v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, Adv. No. 99–412 (Bankr.D.Del. February 3, 2000). The Remaining Claimants were permitted to elect whether to pursue their claims in the Baldridge Class Action or in an action previously commenced by the EPMC. (Baldridge Stipulation and Order on Motion to Intervene ¶ 3, February 3, 2000). Those who opted out of the Baldridge Class Action, however, were re-

quired to waive their claims against Continental. *Id.*

In the interim, on October 23, 1998, the EPMC had commenced a lawsuit in the District Court in New Jersey against Continental seeking post-petition enforcement of the CBA ("the New Jersey Action"). Continental filed a motion in this Court seeking an Order enjoining that suit as a violation of the Confirmation Order. We concluded that the Confirmation Order had discharged all claims of the Eastern pilots. *In re Continental Airlines, Inc.*, 236 B.R. 318, 332 (Bankr.D.Del.1999). We, therefore, held that the Confirmation Order enjoined the New Jersey Action. *Id.* On appeal, the District Court agreed and held that *Continental I* precluded any post-confirmation relief even though the CBA survived the bankruptcy process. *In re Continental Airlines, Inc.*, 2000 WL 1425751, at *3 (D.Del. Sept. 12, 2000).

On appeal to the Third Circuit, the EPMC asserted that the Eastern pilots had a post-petition right to enforce the CBA because Continental failed to reject the CBA in accordance with the requirements of section 1113 of the Bankruptcy Code. *In re Continental Airlines, Inc.*, 279 F.3d 226, 229 (3d Cir.2002) (*Continental II*). The Third Circuit disagreed, stating that *Continental I* held that any claim based on the award of seniority, whether pre or post-petition, was compensable by money damages. *Id.* Accordingly, the Third Circuit held that the Eastern pilots' claims were barred by its previous decision and the Confirmation Order. *Id.* at 232.

Concurrently, in the Baldridge Class Action, we concluded that the Eastern pilots' claims were subject to the one-year cap contained in section 502(b)(7). Ultimately, however, a settlement was reached allowing class members' claims in an amount in excess of the cap.

On or about April 7, 2003, representatives of the Respondents filed a petition with the National Mediation Board ("NMB") seeking to resume arbitration under the CBA. The Respondents consist of two groups of Eastern pilots, the EAG and the EPMC, who did not settle their claims (either through the ALPA settlement or the Baldridge Class Action settlement). On May 16, 2003, counsel to Continental sent correspondence to the NMB asserting that any attempt to accede to the Respondent's request was in direct contravention of the Orders of this Court, the District Court and the Third Circuit. Despite this assertion, the Respondents renewed their request for arbitration, asserting that they had not waived any rights, had not settled any claims and had not had their right to arbitration affected.

## II. *JURISDICTION*

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), & (O).

## III. *DISCUSSION*

██ The Motion requires us to interpret the decisions of the Third Circuit in this very case.[2] In rendering our decision, we are bound by the doctrine of law of the case to "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces". *Continental*, 236 B.R. at 322 (citing *Casey v. Planned Parenthood of Southeastern Pennsylvania*, 14 F.3d 848, 857 (3d Cir.1994)).

### A. *Effect of the Discharge Injunction*

██ Continental asserts that the Respondents violated the Confirmation Order

---

**2.** In fact, this is the second time that we have been asked to interpret the decision of the Third Circuit on this very issue. *Continental*, 236 B.R. 318.

when they sought a resumption of the arbitration proceeding. Although the Third Circuit's decision in *Continental I* vacated the Confirmation Order to the extent it prevented arbitration under the CBA, Continental asserts that the Court's ruling left intact all other aspects of the Confirmation Order and that, because of changed circumstances, the Respondents' actions are a violation of the discharge injunction.

We disagree. We conclude that the Respondents' request for arbitration does not violate the Confirmation Order or any other order entered in this case. In *Continental I*, the Third Circuit upheld the District Court's dissolution of the injunction of arbitration. *Continental I*, 125 F.3d at 136–37. The Court concluded that section 1113 of the Bankruptcy Code renders the injunction invalid because Continental failed to reject the CBA. *Id.* The intent of section 1113 is to preclude debtors from unilaterally terminating a collective bargaining agreement without following its strict mandate. *Id.* at 137. The Court consequently held that the discharge injunction could not apply to the arbitration because enforcing it would have the effect of permitting Continental to escape its duty to arbitrate under the CBA. *Id.* The Court specifically rejected Continental's argument that it had no duty to arbitrate and concluded, on the contrary, that Continental was bound to arbitrate. *Id.* Accordingly, we must follow the law of the case and conclude that the discharge injunction does not enjoin the Respondents' attempt to resume the arbitration under the CBA.

### B. *Futility of Arbitration*

■ Continental contends that the Respondents' action is improper because they are bound by the settlement in the Baldridge Class Action or are entitled to no relief because they waived their claims.

Accordingly, Continental asserts that it should not be forced to arbitrate the Respondents' claims because their attempt to recover from Continental is futile.

The Respondents contend, however, that even if they cannot recover from Continental, the resumption of arbitration is appropriate because it may serve other purposes. In particular, they assert that they continue to have a contractual and statutory right to pursue arbitration that may generate a recovery from parties other than Continental.

Again, we find that we are bound by the decision of the Third Circuit in *Continental I*. In concluding that the right to seniority integration gave rise to monetary damages, the Third Circuit determined that the claims were dischargeable in bankruptcy. *Continental I*, 125 F.3d at 136. The Third Circuit, however, limited its holding to how the claims would be treated in Continental's bankruptcy. *Id.* The Court did not determine if an award was warranted, whether an award should be granted or who would be liable should an arbitration award be granted. *Id.* At the time it upheld the right to arbitrate under the CBA, the Third Circuit knew that any award the arbitrator may enter against Continental was discharged by the Confirmation Order. It nonetheless concluded that the arbitration should be permitted to proceed. The facts are no different now. Thus, we cannot enjoin the arbitration.

In fact, although the Respondents are barred from recovering any award the arbitrator may enter against Continental, simply obtaining that award may be sufficient. As the Third Circuit noted, the process of arbitration itself has a salutary purpose. *Hays and Co. v. Merrill Lynch*, 885 F.2d 1149, 1158 (3d Cir.1989). Even a pyrrhic victory may be significant from the personal perspective of the Respondents,

who have expended considerable time (almost 13 years), energy and money to prove that Continental and Eastern Airlines wronged them. Further, we cannot discount the precedential effect which any decision may have in future dealings, if any, between the parties and their representatives.

In support of its position that the Respondents lack a basis to pursue arbitration, Continental also relies on the Third Circuit's decision in *Continental II*. However, in *Continental II* the Third Circuit was not asked to enjoin the arbitration; rather it was asked to enjoin a law suit. Further, the Third Circuit concluded that the New Jersey Action was improper because the EPMC was attempting to relitigate an issue previously decided by the Court. *Continental II*, 279 F.3d at 233. The Court explained that the right to seniority integration, for both pre and postpetition conduct, gave rise to a claim dischargeable in bankruptcy. *Id.* at 231. The Court did not, however, modify its ruling in *Continental I* that its arbitration could was not be enjoined. *Id.* at 228. As a result, we conclude that *Continental II* does not compel us to enjoin the arbitration now sought by the Respondents.

Continental asserts that the arbitration proceeding cannot provide a remedy that will not be contrary to the Confirmation Order. We disagree. Continental ignores the possibility that the arbitration could impact other parties. The Respondents assert that they may be entitled to a remedy against the Continental pilots or others; they assert that to obtain such an award Continental must be a named party in the arbitration. While the Respondents may not be entitled to a recovery from Continental's estate, this does not preclude any relief in the arbitration. Further, the Baldridge Class Action settlement provided that members who withdrew their claims were entitled to pursue damages and such other relief as may be awarded in any judicial forum or arbitration proceeding. (Baldridge Stipulation and Order on Motion to Intervene ¶ 5). This reservation of rights, in conjunction with the Third Circuit's holding in *Continental I*, clearly provides the Respondents with a right to demand arbitration under the CBA and to pursue anyone other than Continental against whom they may have rights.

The Respondents concede that any award that the arbitrator may enter against Continental would be subject to the discharge provided in the Confirmation Order. They have agreed to this Court's jurisdiction to determine whether enforcement of that remedy would violate any Orders entered in this case. That is sufficient protection to Continental to assure that the Orders of this Court will not be violated. Thus, we conclude that no Order previously entered in this case bars the resumption of arbitration by the Respondents and, in fact, the Third Circuit decision in *Continental I* expressly preserved the right of the Respondents to proceed with arbitration. Accordingly, Continental's Motion must be denied.

## IV. *CONCLUSION*

For the reasons set forth above, we deny Continental's Motion seeking an Order to Compel Respondents to Comply with Orders.

An appropriate Order is attached.

### ORDER

**AND NOW** this **17th** day of **DECEMBER, 2003**, upon consideration of the Motion for Order (I) Compelling Compliance with Orders; (ii) Finding Parties in Contempt of Court, and (iii) Imposing Sanctions filed by Continental Airlines, Inc., and the response thereto, it is hereby

**ORDERED** that the Motion filed by Continental Airlines, Inc., is hereby **DENIED**.