

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2007

# In Re Continental

Precedential or Non-Precedential: Precedential

Docket No. 05-1053

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re Continental " (2007). *2007 Decisions.* Paper 1156.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

⎯⎯⎯

Nos. 05-1053, 05-1096

⎯⎯⎯

IN RE: CONTINENTAL AIRLINES, INC., et al.,

Debtors.

*CONTINENTAL AIRLINES, INC.;
CONTINENTAL AIRLINES HOLDINGS, INC.

v.

*THE EASTERN PILOTS MERGER COMMITTEE, INC.;
THE EASTERN ARBITRATION GROUP, INC.; THE
INDIVIDUAL MEMBERS OF THE EASTERN PILOTS
MERGER COMMITTEE, INC.; JOHN O'B. CLARKE, JR.;
THE INDIVIDUALS OF THE EASTERN ARBITRATION
GROUP, INC.

(District of Delaware Civil No. 04-cv-00031)

⎯⎯⎯

EASTERN PILOTS MERGER COMMITTEE, INC.; PETER
CRAWFORD, INDIVIDUALLY AND AS THE
REPRESENTATIVE OF ALL SIMILARLY SITUATED
EASTERN PILOTS; *MICHAEL WEGLARZ,

v.

*EASTERN AIRLINES, INC.; CONTINENTAL AIRLINES,
INC.; AIR LINE PILOTS ASSOCIATION

(District of Delaware Civil No. 04-cv-00071)

⎯⎯⎯

*(Amended in accordance with the Clerk's Order dated
03/02/05)

Eastern Pilots Merger Committee, Inc.; Peter Crawford; the Individual Members of the Eastern Pilots Merger Committee, Inc.; John O'B. Clarke, Jr.,

Appellants in No. 05-1053.

Michael Weglarz,

Appellant in No. 05-1096.

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 04-cv-00031, 04-cv-00071)
District Judge: Honorable Sue L. Robinson

_____

Argued September 14, 2006

Before: FUENTES, FISHER, and McKAY,[*] Circuit Judges.

(Opinion Filed: April 24, 2007)

John O'B. Clarke, Jr. (Argued)
Highsaw, Mahoney & Clarke, P.C.
1050 17th Street, N.W.
Suite 444
Washington, D.C. 20036

Attorney for Appellants

_____

[*] The Honorable Monroe G. McKay, Senior Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

Michael Weglarz (Argued)
615 Briars Bend
Alpharetta, GA 30004

      Pro se

Jon A. Geier
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

Robert S. Brady
Joseph M. Barry (Argued)
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street
17th Floor, Brandywine Building
Wilmington, DE 19899

      Attorneys for Continental

Daniel M. Katz (Argued)
Katz & Ranzman, P.C.
5028 Wisconsin Avenue, N.W.
Suite 250
Washington, D.C. 20016

      Attorney for Air Line Pilots Ass'n

_____

OPINION OF THE COURT
_____

Fuentes, <u>Circuit Judge</u>.

      In 1986, airline pilots employed by the former Eastern Airlines entered into a collective bargaining agreement with their employer. The agreement stated that if Eastern merged with another airline, the Eastern pilots' seniority rights would be fairly

-3-

integrated with those of the new airline. Shortly thereafter, Eastern merged with Continental but Continental refused to bargain with Eastern's pilots over seniority rights. When Continental entered bankruptcy proceedings, Eastern's pilots filed claims based on the collective bargaining agreement. In two prior appeals we determined that the collective bargaining agreement gave Eastern's pilots a right of payment that was discharged in Continental's bankruptcy.

With no relief remaining against Continental, Eastern's pilots have now turned their sights on Continental's pilots. They claim that the collective bargaining agreement compels Continental and its pilots into an arbitration to determine whether Eastern's pilots can recover damages from Continental's pilots. They contend that our prior decisions, the Railway Labor Act, and the Norris-LaGuardia Act compel this result. For the reasons that follow, we will affirm the District Court's decision that arbitration is precluded.[1]

## I. Background

### A.      Continental I

In 1986, Eastern Airlines ("Eastern") and the union representing its pilots, the Air Line Pilots Association (the "Pilots Association"), ratified a collective bargaining agreement ("CBA"). The CBA gave Eastern's pilots the right to arbitrate disputes over the agreement's labor protective provisions ("Labor Provisions"), which assured Eastern's pilots a fair integration of pilot seniority

---

[1] Two published decisions of our Court have recounted much of the complex factual history of this case. In re Continental Airlines, Inc., 125 F.3d 120 (3d Cir. 1997) ("Continental I"); In re Continental Airlines, Inc., 279 F.3d 226 (3d Cir. 2002) ("Continental II"). Other parts of that history have been laid out in numerous court documents in the jointly filed appendix. There are no material disputes about these facts, only about their legal significance. As we did in Continental II, we recount only those facts relevant to the issues before us. See Continental II, 279 F.3d at 228.

lists in the event that Eastern merged with another airline.

The day after the CBA was ratified, Texas Air Corporation, the parent company of Continental Airlines, Inc. ("Continental"), acquired Eastern. According to the Pilots Association, Texas Air Corporation then "merged" Eastern's operations into Continental's within the meaning of the CBA. As a result, the Pilots Association asserted that the Labor Provisions required integration of Eastern's seniority list with Continental's seniority list. After Eastern and Continental refused to bargain with the Pilots Association about integration of the lists, the Association initiated arbitration.

Four years later, in December 1990, Continental filed for Chapter 11 bankruptcy protection. On behalf of Eastern's pilots, the Pilots Association filed proofs of claims in the bankruptcy proceeding, asserting a right to seniority integration. When the Bankruptcy Court eventually confirmed Continental's plan of reorganization, it decided that any claim based on the CBA's Labor Provisions would be treated as a claim for payment that would be discharged in bankruptcy. Furthermore, it enjoined arbitration of the Labor Provision dispute.

On appeal, we held that Eastern's pilots could not specifically enforce a right to seniority integration. Instead, we agreed with the Bankruptcy Court that any claim based on seniority integration should be treated as one for payment, dischargeable in bankruptcy. Continental I, 125 F.3d at 136. Among the many reasons given, we expressed concern that specific enforcement of seniority integration "could potentially result in the displacement of many Continental pilots. Such displacement has the potential to create an environment rife with hostility and low employee morale, not to mention a detrimental effect on employer-employee relations." Id. We determined that the "alternative remedy" of money damages was more appropriate than an actual integration of the lists. Id.

Nevertheless, we recognized in Continental I that we lacked jurisdiction to evaluate the underlying merits of the Labor Provision dispute. Assessment of the merits fell within the exclusive jurisdiction of an arbitrator. Id. at 130. Because of our limited jurisdiction, we did not assess whether an arbitral award

was actually warranted, but only how any such award should be treated in bankruptcy. Id. at 130-36. In light of this limitation, we concluded it was error for the Bankruptcy Court to enjoin arbitration. We further concluded that, because Continental conceded that it was bound by Eastern's CBA in order to secure confirmation of its plan, it could not later disavow that position. See id. at 138. We thus rejected Continental's argument that, because it was not a party to Eastern's CBA, it was not bound to arbitrate a dispute arising under it. Id. Additionally, we held that since Continental failed to properly reject the CBA under 11 U.S.C. § 1113, it could not avoid its obligations through the Bankruptcy Court's injunction. Id. at 137.

###### B.     Continental II

During the pendency of Continental I, the Pilots Association settled its dispute with Continental. Id. at 127. Not all of Eastern's pilots accepted this settlement, however, and the remaining pilots continued to pursue an award under the CBA, both within the bankruptcy and outside of it. Those pilots pursuing claims within the bankruptcy attempted to determine the amount of their entitlement in a class action before the Bankruptcy Court. The parties ultimately settled this suit and the Bankruptcy Court approved the settlement.[2]

The pilots who pursued claims outside the bankruptcy filed suit in the U.S. District Court for the District of New Jersey (the "New Jersey action") as the Eastern Pilots Merger Committee (the "Eastern pilots").[3] In pursuing their case, these Eastern pilots

---

[2] In two unpublished opinions, we affirmed the Bankruptcy Court's settlement order. In re Continental Airlines, Inc., Nos. 03-2374, 03-2375 (3d Cir. Mar. 9, 2004); In re Continental Airlines, Inc., No. 03-2376 (3d Cir. Mar. 17, 2004).

[3] Appellants are the Eastern Pilots Merger Committee, its individuals members and officers, its president, Peter Crawford, and its attorney, John O'B. Clarke. We refer to them collectively as "the Eastern pilots" or "Eastern's pilots." Moreover, we will sometimes cite the name of the organization as "EPMC."

-6-

entered into a stipulation ("Stipulation of Withdrawal") before the Bankruptcy Court in which they waived all claims against Continental in the bankruptcy proceeding and consented to a discharge of all relief under Continental's reorganization plan. In the New Jersey action, Eastern's pilots asserted that the CBA survived Continental's discharge, allowing the remaining pilots to specifically enforce seniority integration and to recover damages for Continental's failure to comply with the CBA.

In response to this suit, Continental filed a motion in Bankruptcy Court to halt the New Jersey action, asserting that all potential relief under the Labor Provisions had been addressed within the bankruptcy proceedings. Continental II, 279 F.3d at 228. To enforce Continental's plan of reorganization, the Bankruptcy Court enjoined the New Jersey action, holding that, under Continental I, all relief based on the Labor Provisions had been discharged by the plan. See id. at 228-29 (citing In re Continental Airlines, Inc., 236 B.R. 318, 332 (Bankr. D. Del. 1999)); see also 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.").

In Continental II, we upheld the Bankruptcy Court's injunction, explaining that Continental I had interpreted the CBA as providing a right of payment dischargeable in bankruptcy. 279 F.3d at 230. Moreover, we held that this was the only relief available under the CBA, whether post- or pre-petition. Since the Eastern pilots were seeking relief outside these parameters, we affirmed the Bankruptcy Court's injunction of the New Jersey action.

C.      Subsequent Proceedings

Following Continental II, the Eastern pilots, including an individual pilot named Michael Weglarz,[4] petitioned the National

_____

[4] Mr. Weglarz was also acting as the president of a group of former Eastern Airlines pilots called the Eastern Arbitration Group ("EAG"). This group did not appeal.

Mediation Board ("NMB") for a list of arbitrators to resume arbitration under the CBA. Continental refused to participate in the arbitration and sent a notice to the NMB indicating that an arbitration would violate various court orders. Subsequently, Continental filed a motion with the Bankruptcy Court asking that the pilots seeking arbitration be held in contempt of its confirmation order.

At a hearing before the Bankruptcy Court, the Eastern pilots conceded that "[a]ny claim against Continental under the [Labor Provisions], be it post or pre-petition or however you want to look at it, is gone." (A442-43.) However, they argued, apparently for the first time, that "[t]he . . . claim is not just against Continental. . . . It's Continental and its pilots. They're a party to that contract as well." (A443.) The Eastern pilots would ask the arbitrator to "hold the Continental pilots monetarily liable . . . to the Eastern pilots . . . to compensate them for the seniority that [the Continental pilots] currently have." (A446.) Even though there could be no recovery against Continental, the pilots claimed, Continental could still be forced to attend the arbitration, because of the CBA's arbitration clause.

On December 17, 2003, the Bankruptcy Court denied Continental's motion for contempt and ruled that the Continental bankruptcy discharge did not preclude the arbitration from providing relief against other parties, like Continental's pilots. In re Continental Airlines, Inc., 303 B.R. 734, 739 (Bankr. D. Del. 2003) ("Bankruptcy Opinion"). Moreover, it stated that, even if Eastern's pilots were barred from enforcing an award, "simply obtaining that award may be sufficient." Id. at 738. Continental appealed this decision to the U.S. District Court for the District of Delaware.

Meanwhile, Eastern's pilots had filed suit in the U.S. District Court for the Southern District of Florida affirmatively seeking to compel arbitration. That case was consolidated with Continental's appeal and transferred to the Delaware District Court. In re Continental Airlines, Inc., No. 04-0031, 2004 WL 3119835, at *4 n.4 (D. Del. Dec. 13, 2004) ("District Court

Opinion").[5]  Continental sought to dismiss the motion to compel, and Eastern's pilots sought summary judgment declaring that Continental and its pilots[6] had an obligation to arbitrate under the Railway Labor Act, which regulates disputes between airline employers and employees.

On December 13, 2004, the Delaware District Court concluded that the Eastern pilots could not obtain relief against Continental or its pilots under the CBA.  The Court recognized that "there is no order in the long and convoluted history of this litigation that prohibits the [Labor Provision] arbitration," id. at *4, but it reasoned that allowing an arbitration that could not provide any form of relief would elevate form over substance.  The District Court noted that, "the relentless pursuit of the specific performance of the [Labor Provisions], despite the adverse court rulings, represents a waste of the assets of the estate, as well as a tremendous waste of scarce judicial resources."  Id. at *5.  It further concluded that, "despite . . . efforts to artificially narrow the dispute to being one between the individual pilots, I have to believe that Continental in fact would be affected, if its personnel and payroll were to be changed in any way."  Id.

Therefore, the District Court (1) reversed the decision of the Bankruptcy Court; (2) enjoined Eastern's pilots from pursuing arbitration of the Labor Provision dispute; and (3) dismissed the suit to compel arbitration.  Id.  The Eastern pilots appeal these decisions.

## II. Discussion

In reversing the Bankruptcy Court's decision and dismissing

---

[5] Michael Weglarz was added by the District Court as a plaintiff in the consolidated case.  Id.

[6] Eastern's pilots sought to compel the Pilots Association, now the collective bargaining representative of Continental's pilots, to participate in arbitration.  When we refer to "Continental's pilots," we also mean the Pilots Association, unless indicated otherwise.

the motion to compel arbitration, the District Court concluded that neither Continental nor its pilots had a duty to arbitrate. On appeal, the Eastern pilots argue that our decision in Continental I, the CBA, and the Railway Labor Act compel Continental and its pilots to arbitrate. They also contend that, under the Norris-LaGuardia Act, 29 U.S.C. § 101, et seq., the District Court was without jurisdiction to enjoin the arbitration.

We have jurisdiction pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. We review legal conclusions de novo and factual findings for clear error. Continental I, 125 F.3d at 128. For the reasons that follow, we will affirm.

### A. The Motion to Compel Arbitration

#### 1. Claims Against Continental

Both Eastern's pilots and Continental agree that Continental I and Continental II control the outcome of this case, but they rely on these decisions to reach opposite conclusions.[7] The Eastern pilots argue that Continental I imposes an obligation on Continental to arbitrate the Labor Provision dispute, see Continental I, 125 F.3d at 138, even though relief against the airline is no longer available. Continental argues that Continental II dictates that arbitration for relief under the CBA is unavailable after Continental's bankruptcy discharge. See Continental II, 279 F.3d at 229.

Under Continental II, it is clear that all claims against Continental based on a right of seniority integration were discharged in bankruptcy. We stated explicitly that "[a]ll claims for seniority relief must be based on the [CBA]," and that all such claims were construed in Continental I as permitting only "a 'claim' dischargeable in bankruptcy." Continental II, 279 F.3d at

---

[7] Indeed, each side has filed a motion for summary action. See Third Circuit Local Appellate Rule 27.4 ("A party may move for summary action affirming, enforcing, vacating, remanding, modifying, setting aside or reversing a judgment, decree or order, alleging that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action.").

230 (citing <u>Continental I</u>, 125 F.3d at 136).  Besides such a claim, no relief is available to Eastern's pilots under the CBA.  Accordingly, because Eastern's pilots have waived their claims in bankruptcy pursuant to the Stipulation of Withdrawal, no relief against Continental remains.  Eastern's pilots seem to concede as much, repeatedly assuring us that they seek nothing from Continental itself.[8]

In spite of this limitation, the Eastern pilots contend that claims against Continental's pilots remain under the CBA, and Continental can be forced to attend an arbitration seeking such relief.  They argue that Continental's duty to arbitrate is wholly separate from the availability of relief against it.  For support they point to our statements in <u>Continental I</u> establishing Continental's "duty to arbitrate" the Labor Provision dispute.  <u>See</u> <u>Continental I</u>, 125 F.3d at 138 ("Accordingly, we conclude that Continental is bound by its prior representations that it has a duty to arbitrate the [Labor Provision] dispute.").  We are doubtful, however, that our decision in <u>Continental I</u> contemplated a scenario in which Continental would be forced to attend an arbitration between Eastern's pilots and its own, after its obligations under the CBA had been discharged.  The section in <u>Continental I</u> entitled "Duty to Arbitrate," <u>id.</u>, was responsive to Continental's contention that it was not bound to arbitrate under a CBA to which it was not a party.  Our discussion rejected that contention and permitted arbitration to determine the airline's liability to Eastern's pilots.  When these claims were discharged, settled, or waived,

---

[8] It is on this point that we see some divergence between appellants Weglarz and the Eastern Pilots Merger Committee.  It seems that Weglarz still pursues relief against Continental through arbitration.  As the record reflects, however, Weglarz waived all claims in bankruptcy against Continental, pursuant to the Stipulation of Withdrawal.  Accordingly, as relief in bankruptcy was the only relief available under <u>Continental I</u> and <u>Continental II</u>, Weglarz cannot pursue relief against Continental.

We also note that Weglarz appealed a decision of the District Court denying his motion to impose sanctions on Continental.  Because we will affirm the District Court on all other grounds, we will also affirm this decision.

Continental's duty was satisfied.

Because of its discharge, any arbitration against Continental will necessarily be futile, and we will not compel the airline to participate in an arbitration whose award cannot be enforced against it. See AmeriSteel Corp. v. Int'l Bhd. of Teamsters, 267 F.3d 264, 276 (3d Cir. 2001) ("[C]ourts should not compel parties to submit to arbitration when there is nothing to arbitrate."). Although we have declined to determine a remedy for a possible breach of the CBA, Continental I, 125 F.3d at 130, we have also concluded that any award against Continental was discharged. Continental II, 279 F.3d at 230.[9] Therefore, there is nothing left for Continental to arbitrate and we see no basis for compelling a futile proceeding, "the very antithesis" of what an arbitration should be. District Court Opinion, 2004 WL 3119835, at *5.

### 2. Claims Against Continental's Pilots

Eastern's pilots also contend that arbitration must be compelled so they can pursue recovery against Continental's pilots. They argue that an arbitrator might determine that the CBA allows an award against Continental's pilots because Continental's pilots hold positions promised to them by the CBA. The Eastern pilots contend that only an arbitrator—and not a federal court—can determine whether this remedy is appropriate. EPMC's Br. at 40 (quoting Continental I, 125 F.3d at 130). We do not agree. It is axiomatic that arbitration is a matter of contract. CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 137 (3d Cir. 2004). Accordingly, a party cannot be required to submit to arbitration unless he has "agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). This preliminary question of substantive arbitrability is squarely a

---

[9] Paradoxically, there is some indication that Eastern's pilots still seek damages against Continental itself: both for its "post-confirmation breach of the contractual obligation to arbitrate," and for the costs of arbitration under the CBA. EPMC's Br. at 45-46. These claims based upon alleged "post-discharge" violations of the CBA were rejected and barred by Continental II, 279 F.3d at 230-31.

matter for "judicial determination." Id. at 649.

The CBA is an agreement between Eastern Airlines and its former pilots, and the seniority rights Eastern's pilots seek are merely a creation of that contract. See Rakestraw v. United Airlines, 981 F.2d 1524, 1535 (7th Cir. 1992) ("Seniority is a creation of collective bargaining agreements and equivalent contracts between unions and employers."). Continental's pilots are not a party to the CBA and there is no evidence that they or their representatives ever agreed to arbitrate a dispute about its provisions. See Bel-Ray Co. v. Chemrite, 181 F.3d 435, 444 (3d Cir. 1999) ("When asked to enforce an arbitration agreement against a nonsignatory, we ask whether he or she is bound by that agreement under traditional principles of contract and agency law."). Because Continental's pilots have not agreed to arbitrate, we cannot compel them to do so. See CTF Hotel Holdings, 381 F.3d at 137 ("If a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so.") (alteration in original) (quoting Bel-Ray, 181 F.3d at 444).

Eastern's pilots contend, however, that the Railway Labor Act ("RLA") requires a contrary result. The RLA establishes a "comprehensive framework" for resolving labor disputes in the railroad and airline industries. Indep. Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 689 (3d Cir. 1998). This framework is intended to "avoid any interruption to commerce or to the operation of any carrier engaged therein." Id. (quoting the RLA, codified at 45 U.S.C. § 151a). "To realize this goal, the RLA establishes a mandatory arbitral mechanism for the 'the prompt and orderly settlement' of two classes of disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (quoting 45 U.S.C. § 151a). The first class, major disputes, involve "the formation of collective bargaining agreements or efforts to secure them." Id. (internal quotation marks and alteration omitted). The second class, minor disputes, involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. at 253 (internal quotation marks omitted). "Federal courts have broad powers to intervene in some major disputes, but the [RLA] prohibits federal courts from becoming involved in minor disputes." Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc., 960 F.2d 345, 348 (3d Cir. 1992) ("USAir").

-13-

In <u>Continental I</u>, we held that the dispute between Continental and Eastern's pilots over the meaning of the Labor Provisions was a "minor dispute," subject to the exclusive jurisdiction of an arbitrator. <u>Continental I</u>, 125 F.3d at 130. Eastern's pilots now contend that the RLA requires Continental's pilots to submit to arbitration. Again, we disagree. Just because their dispute with Continental was deemed a minor dispute in <u>Continental I</u> does not mean that such a dispute still exists. Since <u>Continental I</u> was decided, the Eastern pilots have relinquished all relief against Continental, and now seek relief solely against its pilots.

In spite of the Eastern pilots' characterization, this is not a "minor dispute." Minor disputes are those which relate "either to the meaning or proper application of a particular provision" of a collective bargaining agreement. <u>Int'l Ass'n of Machinists and Aerospace Workers v. U.S. Airways, Inc.</u>, 358 F.3d 255, 260 (3d Cir. 2004). Such disputes can be "conclusively resolved by interpreting the existing collective bargaining agreement." <u>USAir</u>, 960 F.2d at 348 (quoting <u>SEPTA v. Bhd. of R.R. Signalmen</u>, 882 F.2d 778, 782-83 (3d Cir. 1989)). In this case, we cannot resolve a claim by Eastern's former pilots against Continental's current pilots by interpreting the CBA. The RLA does not dispense with the preliminary question of arbitrability,[10] and no agreement binds Continental's pilots. Accordingly, interpretation of the CBA will not resolve the dispute in this case. <u>Cf.</u> <u>AmeriSteel</u>, 267 F.3d at 276 ("[B]ecause AmeriSteel cannot be bound by the substantive terms of the CBA . . . there simply is no contract for the arbitrator to construe.").

Moreover, the duty of arbitration cited by Eastern's pilots extends to disputes between "an employee or group of employees and a carrier or carriers by air." 45 U.S.C. § 184. It does not

---

[10] <u>See</u> <u>USAir</u>, 960 F.2d at 349 (retaining jurisdiction in RLA context to determine "whether a collective bargaining agreement imposes a duty on the parties to arbitrate a particular grievance."); <u>Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l.</u>, 861 F.2d 1546, 1550 (11th Cir. 1988) (deciding CBA was enforceable before deciding whether RLA applied).

extend to a dispute "between existing employees of an existing carrier and the former employees of a former carrier." District Court Opinion, 2004 WL 3119835, at *5. Because this alleged dispute does not involve carriers and employees, the RLA's duty of arbitration is inapplicable. Cf. Beckett v. Air Line Pilots Ass'n, 59 F.3d 1276, 1278 (D.C. Cir. 1995) (refusing to apply RLA to dispute between employee and union, because RLA applies to disputes between employees and carriers).

Finally, it is doubtful that the claims of Eastern's pilots can rightly be characterized as a "dispute." After years of unsuccessful litigation seeking to specifically enforce the CBA against Continental, Eastern's pilots have now turned their sights on Continental's pilots. Until this point, Eastern's pilots have not asserted claims against Continental's pilots, and we think it a stretch to characterize their recent assertions as creating a dispute with them. Accordingly, the District Court properly denied the Eastern pilots' motion to compel arbitration.

### B.     The Injunction against Arbitration

As we have discussed, Eastern's pilots sought to resume arbitration under the CBA. They did so in spite of our rulings that all claims based on the CBA had been discharged in Continental's bankruptcy. The District Court enjoined the resumption of arbitration against Continental and its pilots. On appeal, Eastern's pilots challenge this injunction asserting that the Norris-LaGuardia Act ("NLA") deprived the District Court of jurisdiction to issue it.

For reasons similar to those pertaining to the RLA, we reject this contention. The NLA provides that:

> [n]o court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter . . . .

29 U.S.C. § 101 (emphasis added). We apply a four-step analysis to determine whether the Act divests a district court of jurisdiction:

-15-

we consider (1) whether the action involves a "labor dispute" under 29 U.S.C. § 113(c), and (2) whether the relief fashioned by the district court involves one or more injunctions as defined by the NLA; if these steps are answered affirmatively, we next determine (3) whether the district court complied with the procedural requirements of the NLA, and (4) if the district court failed to so comply, whether a judicially-created exception applies. Lukens Steel Co. v. United Steelworkers of Am., 989 F.2d 668, 675-76 (3d Cir. 1993).

The contention of the Eastern pilots fails at step one. The NLA defines a "labor dispute" as:

> any controversy concerning terms or conditions of employment, or concerning the association or representation of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c). A case involves a labor dispute within this definition if "the employer-employee relationship is the matrix of the controversy." Lukens Steel, 989 F.2d at 676 (quoting Columbia River Packers Ass'n, Inc. v. Hinton, 315 U.S. 143, 147 (1942) (internal quotation marks and alteration omitted)).[11]

---

[11] We have previously found a "labor dispute" when an employer and its employees dispute the terms of the collective bargaining agreement governing their relationship. See, e.g., id. ("[A]n injunction to block an arbitration under a collective bargaining agreement is fully subject to the strictures of the Norris-LaGuardia Act.") (quoting In re District No. 1-PACIFIC Coast Dist., Marine Eng'rs' Beneficial Ass'n, 723 F.2d 70, 74 n.2 (D.C. Cir. 1983)); United Tel. Workers, AFL-CIO v. Western Union Corp., 771 F.2d 699, 704 (3d Cir. 1985) ("As the present matter concerns negotiations seeking to arrange terms or conditions of employment, it falls within the coverage of the Act.") (internal quotation marks omitted). Unlike Lukens Steel and Western Union, however, this case presents no dispute between an employer

-16-

Although the phrase "labor dispute" has been construed broadly, we do not believe such a dispute is involved here. Eastern's pilots point to no controversy involving the "terms or conditions of employment," nor about the "representation of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c). Instead, this case involves one employee group's claims for money damages against another employee group under a CBA that no longer governs any employer-employee relationship. The "matrix" of this controversy cannot fairly be considered the "employer-employee relationship."

Nor is this result affected by the intention of Eastern's pilots to use a possible award against Continental's pilots to obtain seniority integration from Continental. The Eastern pilots have stated that they hope to "use whatever award [we] receive[] against the Continental pilots to have those pilots bargain with Continental to <u>share</u> their seniority with some of [Eastern's pilots.]" EPMC's Br. at 46. Such an expectation does not transform this into a dispute with an employer about working conditions.

Finally, we reject the argument of Eastern's pilots that, even assuming jurisdiction, the District Court improperly enjoined the resumption of arbitration. Because Eastern's pilots seek to arbitrate claims based on the right to seniority integration, they seek relief for claims discharged according to <u>Continental I</u> and <u>Continental II</u>. The Eastern pilots cannot avoid this discharge simply by claiming they will request an award against Continental's pilots. Indeed, their stated theory of liability against the Continental pilots depends almost entirely on claims against Continental under the CBA. Eastern's pilots state that the "nexus" giving rise to their claims against Continental's pilots is "the seniority that the Continental pilots are exercising, coupled with Continental's commitment to the Eastern pilots that, if there was a merger that affected seniority, 'provisions shall be made for the integration of seniority lists in a fair and equitable manner.'" EPMC's Br. at 49 (quoting the CBA). This novel theory is

and employees about the provisions of a collective bargaining agreement affecting the terms of employment.

essentially a claim seeking to remedy a breach of Continental's duty under the CBA. We have already determined that all such claims were discharged in bankruptcy, so Eastern's pilots were rightly enjoined from pursuing one.

### III. Conclusion

In this appeal, the Eastern pilots seek to sidestep Continental I and Continental II by raising claims against Continental's pilots yet relying on statutes, precedent, and a CBA relevant only to their now-defunct dispute with Continental. The District Court dismissed their motion to compel and enjoined resumption of arbitration. For the reasons stated, we will affirm.