

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2002

# In Re: Cont Airlines

Precedential or Non-Precedential:

Docket 0-3505

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re: Cont Airlines" (2002). *2002 Decisions.* Paper 42.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/42

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 25, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3505

IN RE CONTINENTAL AIRLINES, INC.,

      Debtor

EASTERN PILOTS MERGER COMMITTEE,

      Appellant

v.

CONTINENTAL AIRLINES, INC.

PATRICIA A. STAIANO, Trustee

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 99-CV-00795)
District Judge: Honorable Sue L. Robinson

Argued: December 11, 2001

Before: BARRY and ALDISERT, Circuit Judges, and
FULLAM,* District Judge.

(Filed: January 25, 2002)

_____

* The Honorable John P. Fullam, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Carol Connor Flowe (argued)
Arent, Fox, Kintner, Plotkin &
 Kahn, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

John J. Gibbons
Gibbons, Del Deo, Dolan, Griffinger
 & Vecchione, PC
One Riverfront Plaza
Newark, N.J. 07102

David L. Shapiro
1575 Massachusetts Avenue
Cambridge, MA 02138

James F. Harker
Herlihy, Harker & Kavanaugh
1300 North Market Street
Suite 400
Wilmington, DE 19801

Charles M. Tatelbaum
Cummings & Lockwood
3001 Tamiami Trail North
Naples, FL 34103

ATTORNEYS FOR APPELLANTS

James L. Patton, Jr. (argued)
Robert S. Brady
Young, Conaway, Stargatt &
 Taylor, LLP
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, DE 19899-0391

ATTORNEYS FOR APPELLEES

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Eastern Pilots Merger Committee ("EPMC" or "Appellants") appeals from a judgment of the district court affirming an order entered by the bankruptcy court enforcing a Reorganization Plan in favor of Appellee, Continental Airlines, Inc. This appeal requires us to decide two questions: (1) whether the district court erred in interpreting the decision in In re Continental Airlines, Inc., 125 F.3d 120 (3d Cir. 1997) ("Continental I "), as encompassing Appellants' post-confirmation rights under a collective bargaining agreement of Eastern Airlines, Inc.; and (2) if this court's decision in Continental I is so interpreted, whether that decision should be reconsidered.

Because the facts and procedural history have been set forth in detail in Continental I, we discuss here only the bare adjudicative facts underlying our discussion of the legal issues presented.

This dispute centers around an action which took place on February 23, 1986, when Eastern Airlines, Inc. and its pilots' union, the Air Lines Pilot Association ("ALPA"), ratified a collective bargaining agreement ("the Agreement") that included certain Labor Protective Provisions ("LPP's"). Under these LPP's, Eastern's pilots secured protection of their seniority rights in the event of a merger between Eastern and another airline carrier by requiring the integration of Eastern's seniority list with the merging carrier's list. The next day, Texas Air Corporation, parent corporation of Continental, acquired Eastern. Subsequently, Continental initiated a Chapter 11 reorganization proceeding.

ALPA filed protective proofs of claim ("Claims") in Continental's bankruptcy, contending that because "a merger between Eastern and another airline carrier [Continental]" had taken place, its members were entitled to specific performance of seniority rights under the LPP's, together with money damages. Thereafter, Continental's

Second Amended Joint Plan of Reorganization was confirmed by the bankruptcy court. The court's confirmation order essentially clarified that any valid claims based on the LPP's would give rise to a right of financial payments that would be dischargeable in bankruptcy. It also provided that Claimants had no right to injunctive, equitable or other relief.

After appealing the bankruptcy court's order to the district court, ALPA settled with Continental, but the LPP Claimants continued their appeal. Unsuccessful in the district court, several groups, including the present Appellants, appealed to this court. We ruled that the bankruptcy court had jurisdiction to decide how the Claims would be treated in bankruptcy, i.e., that "the bankruptcy court was well within its authority to exercise jurisdiction over the issue of the status of the bankruptcy claim[s]." In re Continental Airlines, Inc., 125 F.3d at 131. And critically important, we determined that the Claims could be converted to money damages. Id. at 136.

The Supreme Court denied a Petition for a Writ of Certiorari. LLP Claimants v. Continental Airlines, 522 U.S. 1114 (1998).

In response to the commencement of a separate lawsuit brought by Appellants in the United States District Court for the District of New Jersey (the "New Jersey Action"), Continental filed a Reorganized Debtors' Motion for Order Compelling Compliance with Order Confirming Plan of Reorganization and for Sanctions ("the Compliance Motion") in the bankruptcy court seeking to halt the New Jersey Action. The airline sought a determination that the Confirmation Order barred the New Jersey Action because all potential relief relating to the LPP's had been addressed in the bankruptcy proceeding. The bankruptcy court agreed with Continental, stating:

> [S]ince we find that the decision of the Third Circuit affirmed the ruling that all claims of the Eastern Pilots are discharged by the Confirmation Order, we conclude that the Confirmation Order does bar the New Jersey Action instituted by EPMC. Continental is entitled to sanctions against EPMC for its knowing and willful violation of the Confirmation Order.

4

In re Continental Airlines, Inc., 236 B.R. 318, 332 (Bankr. D. Del. 1999).

The bankruptcy court had interpreted Continental I to mean that all remedies for breach of the LPP's, whether before or after bankruptcy, had been reduced to claims for payment in the bankruptcy proceeding and had been discharged by the Confirmation Order.

On appeal, the district court held that Continental I precluded any post-confirmation relief. According to the court, "although the [Agreement] survived the bankruptcy process, [A]ppellants' demand for specific performance of the seniority integration clause did not." In re Continental Airlines, Inc., No. 99-795, slip op. at 6 (D. Del. Sept. 12, 2000). Furthermore, the district court stated that the bankruptcy process would be "meaningless" if the teachings of Continental I did not require that any claim for prospective relief through specific performance be discharged. Id. at 4. Thereafter, EPMC appealed.

I.

Appellants repeatedly emphasize that the members of the EPMC have a post-confirmation right to enforce the LPP's contained in the Agreement because Continental failed to reject the Agreement in accordance with the requirements of 11 U.S.C. S 1113. Building on this major premise, Appellants then argue that because Continental failed to properly reject the Agreement, it was assumed by operation of law. Appellants direct our attention to a number of cases, including In re Roth American, Inc., 975 F.2d 949 (3d Cir. 1992), in which we stated:

> The Union contends that since Roth American has not sought to reject the collective bargaining agreement under section 1113, Roth American has "assumed" the collective bargaining agreement by operation of law, and that Roth American thus is bound by all of its terms. We agree with the Union . . .

Id. at 957. Appellants then argue that under 11 U.S.C. S 365, if the Agreement is assumed it must be assumed cum onere, and any breach of the Agreement must be

5

cured. Appellants' Brief at 13-14 (citing National Labor Relations Bd. v. Bildisco & Bildisco, 465 U.S. 513, 531-532 (1984)). From the foregoing premises they urge us to conclude that because the Agreement "rides through the bankruptcy" as if the bankruptcy had never occurred, the LLP provisions continue to be an unsatisfied obligation on the reorganized debtor as to all seniority rights. Id. (citing Bildisco & Bildisco, 465 U.S. at 546 n.12 (Brennan, J., concurring)).

II.

Distilled to its essence, the argument states that because Continental did not follow the statutory procedures for rejecting an executory contract as set forth in 11 U.S.C. S 1113, somehow Appellants are entitled to the injunctive relief post-confirmation that it sought and was denied during the bankruptcy proceedings. There is a glaring defect in Appellants' argument because its basic assumption is flawed. The reality is that the Agreement has never been rejected. This makes their entire rejection argument irrelevant to the motion to enforce the Reorganization Plan.

In the various proceedings arising out of the Plan, proceedings on all levels of the judicial hierarchy, including this court, no court has proceeded on the basis that the Agreement had been rejected. In the case at bar, which seeks enforcement of the Plan, neither the bankruptcy court nor the district court so suggested. Nor do we do so here.

Rights granted by the bankruptcy court, affirmed by the district court and discussed by us in Continental I, did not arise out of thin air. They were based on the Agreement. We made that crystal clear when this case was previously before us: "Therefore, we conclude that the right to seniority integration [set forth in the Agreement] gives rise to a `right of payment' such that the remedy constitutes a `claim' dischargeable in bankruptcy." In re Continental Airlines, Inc., 125 F.3d at 136.

In Continental I, this court, as did the bankruptcy court and the district court, did not reject the Agreement. We

interpreted it. We construed the seniority provisions of the Agreement as a basis of providing a right of payment in lieu of injunctive relief after considering a variety of factors to include feasibility. The rejection-of-the-Agreement issue raised by Appellants is irrelevant here because the legal basis for the relief awarded -- arbitration to determine entitlement to, and if so, the amount of damages-- was based on an interpretation of the Agreement. What was involved here was a simple categorical deductive syllogism: All claims for seniority relief must be based on the Agreement; Appellants make a claim for seniority relief; therefore, Appellants' claims for seniority relief are based on the Agreement.

III.

We believe the critical question for decision in this appeal to be uncomplicated: Did this court in Continental I adjudicate only claims for pre-petition seniority rights or did our holding include also rights arising post-confirmation? The answer is not difficult. When Appellants appeared before us in Continental I by written brief and oral argument, and responded specifically to questions put to them by the court, and when they filed their Petition for a Writ of Certiorari to the Supreme Court, their arguments were clear and unequivocal: They demanded complete relief under the Agreement for the past, present and future.1

_____

1. For example, in the Eastern Pilots' brief presented to us in Continental
I, they argued:

> The cases have thus uniformly held that where the creditor is
> seeking to require the debtor to take some future action, as opposed
> to seeking money, the courts have held that the debtor's obligation
> is not dischargeable . . .

> The present case is likewise one in which these Eastern pilots are
> not attempting to get money from Continental, but are simply
> seeking to require Continental to take the future action of seniority
> integration if the arbitrator orders it.

Joint Appendix at 1033.

The Pilots reasserted this argument in their reply brief stating:

7

We understood clearly what was before us then, and we adjudicated accordingly:

_____

     [I]t cannot be argued in the present circumstances that there is any
     viable claim for such monetary relief . . . What is left is the purely
     equitable relief of seniority integration.

     * * * * *

     And is not a pilot's career spanning a life's work worth at least a
     company's covenant not to compete? If a company's covenant not to
     compete cannot be "reduced" to money damages and discharged in
     bankruptcy, how can any court claim that a pilot's life-long career
     can be "reduced" to non-existent money damages?

Id. at 764-765.

The transcript of oral argument in Continental I  also indicates that Appellants were seeking post-confirmation as well as pre-petition relief:

     JUDGE MANSMANN: Okay; they get an arbitration award and
     Continental says, "You're a little bit too late; we have gone through
     this whole reorganization; there isn't anything here for you. Now
     what do you do?

     MR. MCGUINN: There is something there for them. There are jobs
     there for them. They can be put on the Continental seniority list and
     that's all they are seeking in this case, to get an arbitration for
     seniority integration under the LPPs that they were promised 11
     years ago.

* * * * *

     MR. MCGUINN: I just want to make sure that you are not
     substituting "money damages" for "seniority integration" because
     you have to understand, pilots, their whole career is based on
     seniority. Simply, reinstatement without seniority integration is
     fairly meaningless.

     Seniority integration is what is provided for in the LPPs; that's what
     we bargained for; that's what we want to get after 11 years.

* * * * *

     MR. MCGUINN: I think you are talking about a career, a career of

a pilot, where he goes from flight engineer or second officer to first officer to captain, who builds up a retirement, who has the sheer love of flying, and all of this has been denied that pilot because of what is going on in this Bankruptcy Court and what is going on

8

The circumstances indicate that seniority integration would not be a feasible remedy and that an alternative remedy of monetary damages would be appropriate. Therefore, we conclude that the right to seniority integration gives rise to a "right of payment" such that the remedy constitutes a "claim" dischargeable in bankruptcy.

We take care to note the boundaries of our holding. It is not our purpose to suggest the award the arbitrator should grant, if an award is warranted upon disposition of the LLP dispute. Our holding is limited to how the claims should be treated in bankruptcy. Simply put, we hold that any claim based on an award of seniority integration arising out of the resolution of the LPP dispute will be treated as a claim in bankruptcy giving rise to a right of payment. As such, the right to seniority integration is satisfiable by the payment of money damages.

_____

with these judicial pronouncements that are totally contrary to Norris-LaGuardia, totally contrary to 1113, where Congress has repeatedly, since the 1930s, said, "Please, Judiciaries, stay out of labor disputes; let them be resolved in arbitration."

Id. at 641-644 (emphasis added).

Finally, Appellants' Petition For Certiorari to the Supreme Court reinforces the broad scope of relief they sought:

Similarly, these Eastern pilots maintain that losing their pilot jobs at Eastern cannot be compensated by mere money damages (even if real money damages were available). For what is involved is work -- a life-long career -- with all its tangible and intangible benefits, such as the sheer love of flying, travel benefits, a secure retirement, the self-esteem and self-worth derived from a job well done, the emotional fulfillment of career advancement from second officer to first officer and finally, after years of preparation on a mature airline, to a captain position. All of these are basic and essential elements animating and driving the human spirit of a pilot. To claim that they can be "reduced" to nonexistent front pay is not only "disingenuous," but an unwarranted insult to all professional airline pilots.

Id. at 417.

In re Continental Airlines, Inc., 125 F.3d at 136 (emphasis added).

Suffice it to say that when we said "any claim based on an award of seniority integration," we meant precisely what we said. With apologies to Gertrude Stein, "any claim" means any claim. If we intended to limit the Claim to pre-petition activity, we would have said so. And if Appellants desired the Claim to be so limited, they, too, would have said so in their written briefs or at oral argument or in their Petition for a Writ of Certiorari to the Supreme Court. But they did not.

Appellants expressly requested global, open-ended relief on their terms. As Roscoe Pound would have phrased it in his felicitous expression, they wanted "specific redress" in the form of a mandatory injunction, not "substituted redress" in the form of money damages.[2]  We hold that the proposition now urged upon us by Appellants has been decided and is totally controlled by our decision in Continental I. The relief defined in that case is the only remedy available to Appellants.

IV.

The preclusive effects of former adjudication have been discussed and determined in varying and occasionally conflicting terminology over the past hundred years. In early years, these concepts were referred to collectively by most commentators as the doctrine of res judicata. 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE S 4402, at 6-7 (1981 and 2000 Supp.). As the law developed, a distinction was made between "pure" res judicata and what came to be known as collateral estoppel. In 1979, the Court explained the distinction:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on

_____

2. Roscoe Pound, The Theory of Judicial Decision, 36 HARV. L. REV.641, 647 (1923).

10

the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. 1B J. MOORE'S FEDERAL PRACTICE P 0.405 [1],pp. 622–624 (2d ed. 1974); e.g. Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 326; Commissioner v. Sunnen, 333 U.S. 591, 597; Cromwell v. County of Sac, 94 U.S. 351, 352–353.

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979).

Today, however, the modern nomenclature for these two doctrines is "claim preclusion" and "issue preclusion," respectively:

Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim. See RESTATEMENT (SECOND) OF JUDGMENTS S S 17, 27, pp. 148, 250 (1980); D. S HAPIRO, CIVIL PROCEDURE: PRECLUSION IN C IVIL ACTIONS 32, 46 (2001).

New Hampshire v. Maine, 121 S. Ct. 1808, 1814 (2001).

These two doctrines share the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., 439 U.S. at 326.

The doctrine of the law of the case is similar in that it limits relitigation of an issue once it has been decided. However, this doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages. 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE P 134.20 (3d ed. 1999). The Court has defined the law of

11

the case as a precept that " `posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by `protecting against the agitation of settled issues.' " Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (citing Arizona v. California, 460 U.S. 605, 618 (1983), and citing 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE P 0.404[1], p. 118 (1984)).

Writing in 1967, Professor Allan D. Vestal identified distinct situations in which a ruling or decision has been made in a case and the same legal problem arises a second time in the same case. Two of these situations are when: (1) an appellate court may rule on a matter and then the same legal question may be raised in the trial court after the case has been remanded to that court for further proceedings; and (2) an appellate court may rule on a matter and then the same legal question may be raised in the same appellate court when the case is appealed a second time.3 The appeal before us fits squarely within the second situation identified by Professor Vestal.

We do not believe that it is necessary to determine which of the foregoing doctrines prevents Appellants from relitigating an issue that was unambiguously identified, properly presented and ably and vigorously argued by extremely able counsel of all parties. We are satisfied that under any of these precepts, Appellants are bound by our previous decision and are precluded from avoiding its mandate.

Although Appellants argue alternatively that this panel should reconsider the holding of Continental I , we lack the power or authority to overrule a decision of a previous panel.4

_____

3. Allan D. Vestal, Law of the Case: Single-Suit Preclusion, 12 UTAH L. REV. 1, 4 (1967).

4. "It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court en banc consideration is required to do so." 3D CIR. I.O.P. 9.1.

Nor are we inclined to initiate a suggestion for rehearing en banc.

* * *

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit