**In re CAREMATRIX CORPORATION, et al., Debtors.**

**CareMatrix Corporation, and CareMatrix of Needham, Inc., Plaintiffs,**

**Thomas Czehowski, Executor of the Estate of Juliet Copson, Defendant.**

Bankruptcy Nos. 00–4159(CGC) to 00–4168(CGC), 01–1635(CGC). Adversary No. 03–59009(CGC).

United States Bankruptcy Court, D. Delaware.

Feb. 19, 2004.

Michael R. Lastowski, Duane Morris LLP, Wilmington, DE, Paul D. Moore, Duane Morris LLP, Boston, MA, for the Reorganized Debtors and Debtors in Possession.

Andrew W. Rasquina, Paul R. Thebaud, Boston, MA, for Thomas Czehowski, Executor of the Estate of Juliet Copson.

### MEMORANDUM DECISION

CHARLES G. CASE, II, Bankruptcy Judge.

Before this Court is CareMatrix's Motion for Preliminary Injunction and an Order (A) Finding Defendant Thomas Czehowski, Executor of the Estate of Juliet Copson in Contempt for Violating an Or-

der of this Court; (B) Enjoining Defendant from Continuing to Prosecute his Action Against CareMatrix of Needham, Inc.; and (C) Imposing Sanctions Against Defendant, Including Payment for Plaintiffs' Attorneys' Fees (the "Preliminary Injunction Motion") (Adv. Docket No. 3).[1] For the reasons set forth below, the Court will deny CareMatrix's Preliminary Injunction Motion.

### BACKGROUND

On November 9, 2000, CareMatrix Corporation ("CareMatrix") and nine of its affiliates (collectively the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession.

The Debtors' initial Disclosure Statement and Joint Plan of Reorganization and Certificate of Service were filed on August 31, 2001 (Docket No. 577).

Nineteen days later, on September 19, 2001, Juliet Copson was admitted to Avery Manor, a nursing home facility. Shortly thereafter, on October 1, 2001, Juliet Copson fell and was injured at the nursing home facility. She died the following day.

Just 23 days after Juliet Copson's death, on October 25, 2001, the Debtors filed a Notice of Hearing to Consider Approval of the First Amended Disclosure Statement Relating to First Amended Joint Plan of Reorganization (Docket No. 682) and First Amended Disclosure Statement (Docket No. 683). The corresponding Certificates of Service were filed on October 29, 2001 (Docket No. 684) and October 31, 2001 (Docket No. 733).

A few days later, November 1, 2001, the Debtors filed a Motion to (i) Approve the First Amended Disclosure Statement Relating to First Amended Joint Plan of Reorganization (ii) Establishing Voting Record Holder Date, (iii) Approving Solicitation Procedures, Forms of Ballots, and Manner of Notice, and (iv) Fixing the Deadline for filing Objections Thereto and Certificate of Service (Docket No. 689).

November 19, 2001, the Court entered an Order (i) Approving Disclosure Statement, (ii) Establishing Voting Record Holder Date, (iii) Approving Solicitation Procedures, Form of Ballots, and Manner of Notice, and (iv) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto (Docket No. 757).

On December 10, 2001, the Debtors filed the Affidavit/Declaration of Service for Second Amended Joint Plan of Reorganization for (i) Class 1 Priority Claims (Docket No. 815); (ii) Class 2 Pre–Petition Claims (Docket No. 816); (iii) Class 3 Miscellaneous Secured Creditors (Docket No. 817); (iv) Class 5 Subsidiary Equity Interests (Docket No. 818); (v) Class 6 Old Common Stock Interests (Docket No. 819); (vi) 2002 Service List (Docket No. 820); and (vii) Class 4 General Unsecured Claims (Docket No. 821). The corresponding Notice was filed on January 21, 2002 (Docket No. 895). In addition, Notice of Filing of Exhibit C to the Second Amended Joint Plan of Reorganization and Certificate of Service were filed on January 22, 2002 (Docket No. 923).

On December 20, 2001, the Court entered an Amended Order Regarding Solicitation Procedures, Forms of Ballots, and

---

**1.** Citations to the docket in the main bankruptcy case, *In re CareMatrix Corporation, et al.*, Case Nos. 00–4159 through 00–4168 and 01–1635, will be to "Docket No. ___." Citations to the docket in the adversary proceeding, *CareMatrix Corporation and CareMatrix of Needham, Inc. v. Thomas Czehowski, Executor of the Estate of Juliet Copson*, Adversary Proceeding No. 03–5009, will be to "Adv. Docket No. ___."

Manner of Notice, and Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto (Docket No. 855).

Notice of Certification of Voting Agent with Respect to the Tabulation of Votes on the Second Amended Joint Plan of Reorganization of CareMatrix Corporation and Certain Affiliates and Certificate of Service were filed on January 24, 2002 (Docket No. 932).

On January 28, 2002, Debtors filed its Second Amended Modified Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and Certificate of Service (Docket No. 939) and Affidavit of Michael J. Zaccaro in Support of Confirmation of Second Amended Joint Plan of Reorganization (Docket No. 938).

On January 29, 2002, Debtors filed a Notice of Filing of Exhibit B to Second Amended Joint Plan of Reorganization and Certificate of Service (Docket No. 941).

This Court issued its Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Plan of Reorganization, of CareMatrix and seven of the CareMatrix debtors, on January 29, 2002 (Docket No. 946).

The next day, January 30, 2002, Debtors filed its Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Further Modified, and Certificate of Service (Docket No. 948); and Affidavit of David B. Currie, Esq., in Support thereof and Certificate of Service (Docket No. 947).

The Certificate of Service for the Court's Findings of Fact and Conclusions of Law and Order Under 11 U.S.C. Sec. 1129(a) and (b) Confirming the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Further Modified was filed on February 6, 2002 (Docket No. 951).

On February 15, 2002, Debtors filed an Affidavit/Declaration of Service of Notice of (i) Entry of Order Confirming Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Further Modified, (ii) Administrative Claims Bar Date, (iii) Professional Fee Claims Bar Date, and Rejection Damages Claims Bar Date (Docket No. 954).

On April 4, 2002 (the "Effective Date"), Debtors' Second Amended Modified Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code became effective. The corresponding Notice was also filed (Docket No. 1149). Pursuant to the Court's Confirmation Order, an administrative claims bar date was set for 60 days after the effective date, June 3, 2002.

On June 13, 2002, Thomas Czehowski, the executor of Juliet Copson's estate (the "Executor") sent a letter to Avery Manor's management company regarding Juliet Copson's claim for wrongful death. Since the incident occurred in October of 2001, the management company forwarded the letter to York Claims Service, Inc. ("York"). York is the insurance provider to CareMatrix of Needham, Inc. d/b/a Avery Manor. (CareMatrix's Complaint Exhibit B, no. 8, Affidavit of John Seaman dated July 28, 2003, ¶ 2). The Executor sent a demand letter to York on August 22, 2002. In addition, the Executor asserts that from June 13, 2002 through February 23, 2003, York acted on behalf of CareMatrix regarding the claim against Avery Manor, and that during that time no one from Avery Manor or York informed the Executor about CareMatrix's bankruptcy proceeding.

Just over a year after the accident, on December 17, 2002, the Executor on behalf of Juliet Copson, filed a Complaint against Avery Manor in the Massachusetts Superior Court. The complaint was served on

January 10, 2003.[2] On June 5, 2003, the Massachusetts Superior Court *sua sponte* entered a Default for failure to answer the complaint within Standing Order 1–88; the notice was not mailed until June 30, 2003. The Executor was directed to move for default judgment and assessment of damages within thirty days of the order or the case would be dismissed. On June 12, 2002, the Executor filed a Request for Assessment of Damages and Motion for Default Judgment and requested a hearing.

Between January 10, 2003 and June 5, 2003, the Executor continued its discussions with York. York assigned Mr. John Seaman as TPA for the claim against Avery Manor on January 23, 2003. By a letter dated January 31, 2003 to John Seaman, Elizabeth Derrico of CareMatrix stated that "CareMatrix of Needham, Inc., the CareMatrix subsidiary that operated Avery Manor" filed for protection under chapter 11 of the Bankruptcy Code on November 9, 2000; that CareMatrix's plan of reorganization was confirmed on January 29, 2002 and became effective April 4, 2002. Thus, they should be dismissed as a defendant in the action, and they requested that York address this with the Executor. John Seaman received this letter via facsimile on February 5, 2003. John Seaman conveyed this information to the Executor on or about February 25, 2003. In addition, York and CareMatrix requested additional time to answer the complaint; such requests were made orally and were not memorialized in written documentation.[3]

CareMatrix of Needham, Inc. d/b/a Avery Manor moved to dismiss the Executor's complaint on or about June 16, 2003.

The Executor opposed the motion to dismiss on or about June 26, 2003. On June 30, 2003, the Massachusetts Superior Court, Walter F. Timity, Clerk of the Courts ordered the motion to dismiss be stricken as docketed in error, pursuant to the default entered June 5, 2003.

On August 11, 2003, CareMatrix filed a Motion to Remove Default and Default Judgment and Reinstate its Motion to Dismiss. The Massachusetts Superior Court denied this motion on September 11, 2003. CareMatrix filed a Motion for Clarification or in the Alternative Reconsideration of the September 11, 2003 Order. On October 28, 2003, the Massachusetts Superior Court denied this motion. One month later, on November 26, 2003, CareMatrix filed a Petition for Interlocutory Relief to the Massachusetts Appeals Court. The Massachusetts Appeals Court denied the petition, two days later, on November 28, 2003.

It was not until November 21, 2003, that CareMatrix filed an adversary complaint, a summons and notice of pretrial conference, and motion for preliminary injunction against the Executor in the United States Bankruptcy Court for the District of Delaware. The adversary complaint seeks declaratory and injunctive relief against the Executor. Four days later, CareMatrix filed an amended complaint and amended summons and notice of pretrial conference on November 25, 2003. In addition, on November 26, 2003, CareMatrix amended its brief in support of its preliminary injunction motion.

The Executor filed its opposition to the motion for preliminary injunction on December 8, 2003 (Adv. Docket No. 9). In

---

**2.** It is unclear from the record who was actually served with the summons and complaint, however, a factual determination is not required to resolve the issue before this Court.

**3.** Although this fact is in dispute, a factual determination is not required to resolve the issue before this Court.

addition, the Executor filed a motion to dismiss the adversary proceeding on December 30, 2003.[4]

A pretrial preliminary conference with respect to the CareMatrix's adversary proceeding was heard on December 11, 2003. At the hearing the parties provided oral argument on CareMatrix's Motion for a Preliminary Injunction and the Executor's Opposition thereto.

### Summary of Events:

| | |
|---|---|
| November 9, 2000 | Petition Date. |
| August 31, 2001 | Debtor filed initial Disclosure Statement and Joint Plan of Reorganization. |
| September 19, 2001 | Juliet Copson was admitted to Avery Manor nursing home. |
| October 1, 2001 | Juliet Copson fell and was injured at the nursing home facility. |
| October 2, 2001 | Juliet Copson died. |
| October 25, 2001 | Debtor filed its First Amended Disclosure Statement and Notice of Hearing to Consider Approval. |
| November 1, 2001 | Debtors filed Motion to Approve the First Amended Disclosure Statement, Joint Plan of Reorganization, Establish Voting Record Holder Date, Approving Solicitation Procedures, and Fixing Deadline for Filing Objections. |
| November 19, 2001 | Order Approving First Amended Disclosure Statement, Establish Voting Record Holder Date, Approving Solicitation Procedures, and Fixing Deadline for Filing Objections. |
| December 10, 2001 | Debtor filed Affidavit/Declaration of Service for Second Amended Joint Plan of Reorganization for Class 1—Class 6 claims. |
| January 28, 2002 | Debtors filed its Second Amended Modified Joint Plan of Reorganization. |
| January 29, 2002 | Court's Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Second Amended Joint Plan of Reorganization. |
| January 30, 2002 | Debtors filed its Second Amended Plan of Reorganization as Further Modified. |
| February 15, 2002 | Notice of Confirmation Order, Administrative Claims Bar Date, Professional Fee Claim Bar Date, and Rejection Damages Claims Bar Date was filed. |
| April 4, 2002 | Effective Date for the Second Amended Plan of Reorganization. Notice of the Effective Date was filed. |
| June 3, 2002 | Administrative Claims Bar date. |
| June 13, 2002 | Executor sent letter to Avery Manor's management regarding Juliet Copson's claim for wrongful death. The management company sent the letter to York Claims Services. Executor began communications with York regarding wrongful death the claim against Avery Manor. |
| August 22, 2002 | Executor sent demand letter to York. |
| December 17, 2002 | Executor commenced an action against Avery Manor in the Massachusetts Superior Court. |
| January 10, 2003 | Complaint was served. |
| January 23, 2003 | York assigned John Seaman as the TPA. John Seaman began communications with the Executor. |
| January 31, 2003 | Letter to York from CareMatrix providing information regarding the CareMatrix the bankruptcy proceeding and that they should be dismissed as a defendant in the action. CareMatrix requested that York address this with the Executor. |
| February 5, 2003 | John Seaman received the January 31, 2002 letter. |
| February 25, 2003 | York informed the Executor of the CareMatrix bankruptcy and confirmation order. |
| March 12, 2003 | Executor rejected a settlement offer by York and would not withdraw the complaint. |

---

4. This motion is not currently before the Court.

| June 5, 2003 | Massachusetts Superior Court *sua sponte* entered default against CareMatrix. |
| June 12, 2003 | Executor filed a request for assessment of damages, motion for default judgment and requested a hearing as required by the court. |
| June 16, 2003 | CareMatrix moved to dismiss the Executor's complaint. |
| June 26, 2003 | Executor opposed CareMatrix's Motion to Dismiss. |
| June 30, 2003 | Notice of default was mailed by the Massachusetts Superior Court. |
| June 30, 2003 | Massachusetts Court ordered CareMatrix's Motion to Dismiss stricken as docketed in error. |
| August 11, 2003 | CareMatrix filed a Motion to Remove Default Judgment and Reinstate its Motion to Dismiss. |
| September 11, 2003 | Massachusetts Superior Court denied CareMatrix's motion. |
| September 11, 2003 | CareMatrix filed a Motion for Clarification or in the Alternative Reconsideration of September 11, 2003 Order. |
| October 28, 2003 | Massachusetts Superior Court denied the CareMatrix's Clarification Motion. |
| November 21, 2003 | CareMatrix filed an Adversary Complaint and Motion for Preliminary Injunction against the Executor, in the U.S. Bankruptcy Court, District of Delaware. |
| November 25, 2003 | CareMatrix filed an Amended Adversary Complaint. |
| November 26, 2003 | CareMatrix filed an amended brief in support of its preliminary injunction motion. |
| November 26, 2003 | CareMatrix filed Petition for Interlocutory Relief to the Massachusetts Appeals Court. |
| November 28, 2003 | Massachusetts Appeals Court denied the Petition. |
| December 8, 2003 | Executor filed its opposition to CareMatrix's Motion for Preliminary Injunction. |

## JURISDICTION

The Court has jurisdiction over CareMatrix's Motion pursuant to 28 U.S.C. §§ 1334, 157 and 11 U.S.C. § 105.

The Court does not have jurisdiction over the Executor's wrongful death action against CareMatrix pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (O) and 157(b)(5).

## POSITION OF THE PARTIES

### A. *CareMatrix's Position:*

CareMatrix takes the position that the Executor's suit is barred by confirmation of the Debtors' plan of reorganization and thus the Executor is in contempt of this Court's order confirming the plan when the Executor commenced and continued to pursue a Massachusetts state court action against CareMatrix. CareMatrix asserts that prior to confirmation Juliet Copson had "constructive" knowledge of the Debtors' bankruptcy proceeding and, thus, is bound by the Debtors' plan of reorganization and this Court's Confirmation Order. In addition, CareMatrix asserts that the Executor's action was not brought against CareMatrix but Avery Manor.

At the pretrial hearing, CareMatrix asserted that at the time of the incident, Avery Manor was not owned by any of the Debtors, nor was it managed by any of the Debtors. CareMatrix acknowledges that CareMatrix Needham was the lessee/tenant of Avery Manor, and was the licensed operator of the facility, but there was a third party manager.

### B. *The Executor's Position:*

The Executor asserts that Juliet Copson did not have actual, formal or constructive knowledge of the Debtors' bankruptcy proceedings, thus, Juliet Copson is not bound by the provision of the Debtors' plan of reorganization or this Court's Order confirming the Debtors' plan of reorganization. In addition, even if Juliet Copson

had knowledge of the Debtors' bankruptcy, the Debtors' never served her with any documents relating to the Debtors' plan of reorganization or documents that her claim could be barred, thus, Juliet Copson is not bound by the provision of the Debtors' plan of reorganization or this Court's Confirmation Order.

During the pretrial hearing, the Executor asserted that Avery Manor was the nursing home facility and the business name of CareMatrix.

## DISCUSSION

### I. *Preliminary Injunction:*

■ The standards for granting or denying a motion for a preliminary injunction are well established. A preliminary injunction is an extraordinary and drastic remedy. *In re Combustion Engineering, Inc.*, 292 B.R. 515, 518 (Bankr.D.Del.2003). The movant bears the burden of showing (1) that there is a reasonable probability of success on the merits, and (2) that they face irreparable harm without the injunction; the court, when relevant, should consider whether (3) the threatened injury exceeds any harm that would flow from the injunction, and (4) if the injunction is in the public interest. *See Eli Lilly and Co. v. Premo Pharm. Lab., Inc.*, 630 F.2d 120, 136 (3d Cir.1980); *accord Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994); *Landmark Land Co., Inc. v. Office of Thrift Supervision*, 990 F.2d 807, 810 (5th Cir.1993); *In re Combustion Engineering, Inc.*, 292 B.R. at 518; *In re Rickel Home Centers, Inc.*, 199 B.R. 498, 501 (Bankr.D.Del.1996); *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F.Supp.2d 556, 564 (D.N.J.2000).

(1) *Reasonable probability of success on the merits:*

■ CareMatrix correctly asserts that a bankruptcy court has authority to enjoin a party from pursuing claims against a debtor that were discharged pursuant to a court's confirmation order. *See In re McNeil*, 128 B.R. 603, 615 (Bankr.E.D.Pa. 1991); *see also American General Finance, Inc. v. Tippins, (In re Tippins)*, 221 B.R. 11, 27 (Bankr.N.D.Ala.1998). The Court's authority to enjoin parties stems from § 105 of the Bankruptcy Code which provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title." 11 U.S.C. § 105(a).

In addition, § 1141 of the Bankruptcy Code, provides in relevant part:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provision of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.

(c) ... after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors ...

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation ... whether or not

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan ...

11 U.S.C. § 1141.

■ The Debtors' specifically included an injunction provision in its plan of reor-

ganization. Section 9.3 of the Debtors' plan of reorganization provides:

> *Injunction.* Pursuant to Section 105 of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors and any successors, assigns or representatives of such Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim, Equity Interest or any other right or claim against the Debtors which they possessed or may possess prior to the Confirmation Date, (b) the enforcement, judgment, award, decree or order with respect to any Claim, Equity Interest or any other right or Claim against the Debtors which they possessed or may possess prior to the Confirmation Date, (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any Claim, Equity Interest or any other right or Claim against the Debtors which they possessed or may possess prior to the Confirmation Date, and (d) asserting any Claims that are released hereby.

See Plan of Reorganization, Section 9.3, page 24 and Confirmation Order, paragraphs G and I, page 24. Accordingly, pursuant to this Court's Order approving the confirmation of CareMatrix's plan of reorganization, dated January 29, 2002, all of CareMatrix's pre-confirmation debts not properly asserted prior to the Confirmation Date or the Administrative Claims Bar Date were discharged. Thus, all issues that were decided or that could have been decided are *res judicata.* *See In re Newstar Energy of Texas, LLC,* 280 B.R. 623 (Bankr.W.D.Mich.2002). However, this provision does not apply to creditors who did not receive notice of the confirmation.

■ CareMatrix overlooks the exception to the general rule: when a creditor does not receive adequate notice, the creditor is not bound by the confirmation order. *Reliable Elec. Co. v. Olson Constr. Co.,* 726 F.2d 620, 622–623 (10th Cir.1984) (the creditor had knowledge of the debtor's reorganization proceeding but did not receive adequate notice of the confirmation, thus they were not bound by the confirmation order); *see also, In re Newstar Energy of Texas,* 280 B.R. at 626—627 (the court held that a creditor was not bound by the debtor's fourth amended confirmation plan even though the creditor received notice of the third amended confirmation plan, thus notice "was neither adequate or appropriate."); *In re Johnson,* 274 B.R. 445 (Bankr.D.S.C.2001) (debtor failed to adequately serve a creditor with notice of a confirmation hearing, thus the creditor was not bound by the confirmation order); *In re International Coins & Currency, Inc.,* 22 B.R. 123 (Bankr.D.Vt.1982) (the court held that an unlisted creditor who filed a proof of claim after the bar date, but who never received notice of the bar date and since there was no bar date set for unlisted creditors, had timely filed its proof of claim even though the creditor was aware of the bankruptcy).

In the *Reliable* case, the creditor had actual knowledge of the reorganization proceeding but did not receive adequate notice of the confirmation. The creditor was listed on the debtor Reliable's schedules as an account receivable but not as a creditor and, thus, did not receive any of the confirmation notices. The bankruptcy court held that "Reliable failed to schedule Olson as a creditor and failed to notify Olson of the confirmation hearing and because Olson's claim would be substantially impaired without due process of the law if

it were forced to comply with the Plan, Olson's claim was not subject to the confirmed Plan and, therefore, not discharged." *Reliable,* 726 F.2d at 621–622.

In affirming the bankruptcy court decision, the Court of Appeals stated that § 1128(a) of the Bankruptcy Code provides that " '[a]fter notice, the court shall hold a hearing on confirmation of a plan.' This section requires notice to be given to all parties in interest. 5 *Collier on Bankruptcy* Para. 1128.01[2] (15th ed.1983)." *Reliable,* 726 F.2d at 622. It is basic that:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (*Citation omitted*). The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) *(citation omitted).* Thus, the Court of Appeals held that although " §§ 1141(c) and (d) ostensibly allow any claim to be discharged even though the claimholder did not receive notice of the proceeding or confirmation hearing ... to discharge a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution." *Reliable,* 726 F.2d at 623.

Here, the parties dispute whether Juliet Copson or the Executor had knowledge of the CareMatrix bankruptcy. However, CareMatrix has failed to provide any evidence that Juliet Copson, or the Executor knew about the CareMatrix bankruptcy proceeding. CareMatrix simply states

that Juliet Copson had constructive notice of the bankruptcy because she was a resident of the Avery Manor nursing facility. Although Juliet Copson was a resident, albeit for thirteen days, this does not prove constructive notice. Moreover, constructive notice is not actual notice and the record is devoid of evidence of actual notice. CareMatrix never amended its schedules of liabilities to include Juliet Copson's claim, and has failed to provide any evidence that Juliet Copson or the Executor were served with notice of the administrative claims bar date, notice of the confirmation hearing, confirmation order, or any documents regarding the CareMatrix bankruptcy proceeding. In fact, the Executor had contacted York just 10 days after the June 3, 2002 CareMatrix administrative claims bar date. Yet it was not until February 25, 2003, eight months after the Executor contacted York regarding Juliet Copson's death, that either York or CareMatrix informed the Executor of the bankruptcy proceeding; the Executor had brought the state court action two months earlier. Juliet Copson and the Executor did not receive notice of the CareMatrix bankruptcy, confirmation hearing, confirmation order, or administrative claims bar date.

Accordingly, the CareMatrix discharge injunction does not apply to creditors who did not receive notice of the confirmation. In the absence of evidence of notice, Juliet Copson's wrongful death action is not barred by the discharge injunction, nor would Juliet Copson or the Executor be bound by this Court's Confirmation Order. Thus, the Court finds that CareMatrix failed to meet its burden of probable success on the merits.

(2) *Irreparable harm without the injunction:*

 CareMatrix correctly asserts that a unilateral violation of a bankruptcy

court order constitutes the harm necessary for an injunction. *See Tippins*, 221 B.R. at 27–28. However, a party cannot be in violation of a bankruptcy court order to which they are not bound.

In addition, the crux of CareMatrix's irreparable harm stems from (1) having had to defend itself in the state court action, (2) incurring substantial fees and costs in defending the state court action and bringing this adversary proceeding, and (3) being faced with both the threat of liability and expense of attorney's fees.

The Court gives little weight to CareMatrix's argument. *See, e.g., In re Rickel Home Centers*, 199 B.R. at 501 (the court was not persuaded by the debtors' financial harm argument). It is obvious from the state court action, as evidenced by the default judgment, that CareMatrix did little to defend itself in that action. Thus, the "substantial fees" incurred could only relate to CareMatrix's attempts to have the default reversed, and ultimately seeking relief from this Court. As addressed at the December 11, 2003 hearing, the Executor's action will not open the flood gates for other actions or reopen the Debtors' distribution because any other similar wrongful death action would be barred by the applicable statute of limitations and the wrongful death action is subject to CareMatrix's insurance policy. Moreover, at the hearing, CareMatrix stated that it could not contest liability now that the default had been entered.

For the reasons set forth above, the Court finds that CareMatrix has not met its burden, and the Court will not grant a preliminary injunction.

## II. *Contempt of Court, Enjoining Continued Prosecution and Sanctions:*

■ CareMatrix argues that the Executor is in contempt of this Court's Confirmation Order dated January 29, 2002 when it filed the Massachusetts state court action and continued its prosecution.

■ In *In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr.D.Del.1999), *aff'd*, 2000 WL 1425751 (D.Del. September 12, 2000), *aff'd*, 279 F.3d 226 (3rd Cir. 2002), this Court stated that "[i]t is axiomatic that a court possesses the inherent authority to enforce its own orders." *In re Continental Airlines, Inc.*, 236 B.R. 318, 331 (Bankr.D.Del.1999), *aff'd*, 2000 WL 1425751 (D.Del. September 12, 2000), *aff'd*, 279 F.3d 226 (3rd Cir.2002). In addition, the Court acknowledged that bankruptcy courts specifically retain jurisdiction to enforce confirmation orders. *Id.* at 326. When a party willfully violates a discharge order, the courts frequently find the party in contempt and impose sanctions. To impose sanctions for civil contempt, the following must be met: "(1) a valid order of the court must exist, (2) the person to be charged with the contempt must have actual knowledge of the order, and (3) the person must have disobeyed the order." *Id.* at 330. In that case, the Court held that (1) there was a valid confirmation order which was upheld by the Third Circuit which barred commencement or continuation of actions against the debtor, (2) EPMC had actual knowledge of the order and its effect because EPMC vigorously sought to overturn the confirmation order, and (3) EPMC violated the confirmation order by commencing an action in state court because the Third Circuit only allowed its arbitration proceeding to continue.

Here, as set forth above, there is no evidence that the Executor was aware of the CareMatrix bankruptcy at the relevant times. Neither CareMatrix nor York informed the Executor of the bankruptcy, confirmation order, or administrative claims bar date. The Executor did not

receive proper notice of the Court's Confirmation Order and, thus, the Executor is not bound by the order. Although a valid court order exists, the January 29, 2002 Confirmation Order, the Court will not hold the Executor in contempt of an order to which he is not bound. Similarly, the Court will not enjoin the Executor from continued prosecution of its state court action, or impose sanctions.

## CONCLUSION

For the foregoing reasons, the Court denies CareMatrix's Motion for a Preliminary Injunction.

## ORDER

**AND NOW**, this 19th day of February, 2004, upon consideration of CareMatrix's Motion for Preliminary Injunction and an Order (A) Finding Defendant Thomas Czehowski, Executor of the Estate of Juliet Copson in Contempt for Violating an Order of this Court; (B) Enjoining Defendant from Continuing to Prosecute His Action Against CareMatrix of Needham, Inc.; and (C) Imposing Sanctions Against Defendant, Including Payment for Plaintiffs' Attorneys' Fees (the "Preliminary Injunction Motion") (Adv. Docket No. 3) and the opposition thereto, and for the reasons set forth in the accompanying Memorandum Decision; it is hereby

**ORDERED** that CareMatrix's Preliminary Injunction Motion is DENIED.