**In re INTEGRATED HEALTH SERVICES, INC., et al., Debtors.**

**FSQ, Inc., f/k/a Five Star Quality Care, Inc., et al., Plaintiffs,**

v.

**Integrated Health Services, Inc., et al., Defendants.**

Bankruptcy No. 00–00389.
Adversary No. 02–05193.

United States Bankruptcy Court, D. Delaware.

March 23, 2004.

Alfred Villoch, III, Edmon L. Morton, James L. Patton, Joel A. Waite, Joseph M. Barry, Maureen D. Luke, Robert S. Brady, Sharon M. Zieg, Young, Conaway, Stagatt & Taylor, Wilmington, DE, Arthur Steinberg, New York City, Francis G. X. Pileggi, Fox Rothschild, O'Brien & Frankel, Ian Connor Bifferato, Bifferato, Bifferato & Gentilotti, Wilmington, DE, J. Kate Stickles, Saul, Ewing, LLP, Wilmington, DE, Megan Nancy Harper, Landis, Rath & Cobb, LLP, Wilmington, DE, Michael G. Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, William Pierce Bowden, Ashby & Geddes, Wilmington, DE, for Debtors.

Don A. Beskrone, Office of U.S. Trustee, Wilmington, DE, U.S. Trustee.

Anthony M. Saccullo, Charlene D. Davis, Christopher A. Ward, GianClaudio Finizio, The Bayard Firm, Wilmington, DE, for Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries.

Charlene D. Davis, The Bayard Firm, Wilmington, DE, Stephanie Ann Fox, Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington, DE, for Official Committee of Unsecured Creditors of Integrated Health Services, Inc., et al.

## AMENDED MEMORANDUM OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Debtors' Motion to Dismiss for failure to state a claim upon which relief may be granted with respect to certain Counts of the Complaint filed by Five Star Quality Care, Inc. ("FSQ"). After considering the arguments presented by both parties, we conclude that the Motion must be denied as to Counts I, II, III and VI and granted as to Count V for the reasons set forth below.

## I. FACTUAL BACKGROUND

On February 2, 2000, Integrated Health Services, Inc., IHS Licensees, and CCA of Midwest, Inc. (collectively "the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On or about April 12, 2000, the Debtors filed a Motion for approval of a settlement agreement ("the FSQ Settlement") between the Debtors and FSQ. The FSQ Settlement provided for the transfer of certain leasehold and security interests in certain health care facilities ("the Transfer Facilities") from the Debtors to FSQ and its licensees.

The United States, acting on behalf of the Department of Health and Human Services ("HHS") and the Environmental Protection Agency, filed an objection to the FSQ Settlement, asserting that the Debtors could not convey their interests in the Transfer Facilities while continuing to maintain and bill under their Medicare Provider Agreements. The objection was resolved through a stipulation ("the Stipulation") which provided for an orderly transfer of the Medicare Provider Agreements to FSQ without a gap in the reimbursement of Medicare expenses. The Stipulation further provided that a cure payment would be made by FSQ to the United States for all existing financial defaults under the Provider Agreements. The United States waived any other claims it had against the Debtors with respect to the Transfer Facilities except claims under

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

the False Claims Act. With the objection of the United States resolved, the FSQ Settlement was approved by Order dated July 7, 2000.

Pursuant to the FSQ Settlement, the Debtors entered into a Management Agreement with FSQ on July 10, 2000. The Management Agreement acknowledged that the Debtors held licenses to operate the Transfer Facilities and provided that the Debtors would retain ultimate control and direction of those facilities until FSQ received state and federal licenses ("the Transition Period"). The Management Agreement further provided that any monies received by the Debtors for Medicare-covered services at the Transfer Facilities during the Transition Period would be forwarded by the Debtors to FSQ.

On October 10, 2001, FSQ and the Debtors entered into a letter agreement ("the Letter Agreement") regarding the final reconciliation of various accounts between FSQ and the Debtors pursuant to the FSQ Settlement.

On February 5, 2003, the Debtors filed a Disclosure Statement relating to their Joint Plan of Reorganization ("the Disclosure Statement"). The Disclosure Statement outlined an additional settlement ("the U.S. Agreement") resolving disputes between the Debtors and HHS relating to many of the Debtors' other facilities and relating to claims filed by the United States Department of Justice against the Debtors and their affiliates for (1) alleged violations of Medicare regulations and the False Claims Act in the approximate amount of $41 million ($123 million in treble damages) and (2) $140 million in contractual indebtedness to HHS arising from the Debtors' purchase of First American Health Care of Georgia, Inc. Pursuant to the U.S. Agreement, the federal government was to receive a payment of $19.1

million for claims arising under the False Claims Act, a portion of which was to be set off against underpayments due by the United States to the Debtors.

The U.S. Agreement was approved pursuant to the Order confirming the Debtors' Plan of Reorganization. The Plan also provided for the transfer of substantially all of the Debtors' remaining facilities to Abe Briarwood Corporation and/or its designee. With the approval of the Plan, the Debtors were left with few remaining liquid assets. As a result, the $19.1 million claim of HHS has been (or will be) satisfied in part by the set-off against amounts due to the Debtors from their operation of the Transfer Facilities during the Transition Period.

On March 17, 2003, FSQ filed a Complaint against HHS and the Debtors contending that the Debtors owe FSQ for services rendered at the Transfer Facilities during the Transition Period. In Count I, FSQ seeks enforcement of the Approval Order, and/or Settlement Agreement, the Management Agreement and the Letter Agreement which provide that the Debtors are to remit to FSQ payments for services rendered at the Transfer Facilities during the Transition Period. In Count II, FSQ asserts that it is entitled to an accounting of all receivables during the Transition Period. In Count III, FSQ asserts that the Debtors breached the Settlement Agreement, Management Agreement, Letter Agreement and Stipulation. In Count V, FSQ asserts that the Debtors were unjustly enriched by the U.S. Agreement because they were relieved of their obligation to reimburse FSQ for services rendered by FSQ during the Transition Period. In Count VI, FSQ asserts that the Debtors breached their fiduciary duties by failing to fulfill their payment

obligations.[2]

On April 21, 2003, the United States on behalf of HHS filed a Motion to Dismiss the Counts of the Complaint against it pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. On May 19, 2003, the Debtors filed their Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

On December 30, 2003, we entered an Order and Memorandum Opinion granting the Motion to Dismiss filed by HHS ("the HHS Opinion"). In the HHS Opinion, we found that the U.S. Agreement's set-off of the $19.1 million claim against amounts due to the Debtors from their operation of the Transfer Facilities during the Transition Period was permitted.

On January 26, 2004, FSQ filed a Further Memorandum in Support of its Opposition to the Debtors' Motion to Dismiss asserting that the HHS Opinion and the Letter Agreement do not relieve the Debtors of their obligations to FSQ.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (E) & (O).

## III. DISCUSSION

To grant a motion to dismiss under Rule 12(b)(6), the movant must establish that there are no facts which would support a claim against it. See, e.g., Wisnieswki v. Johns–Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). The court is required to accept all factual assertions in the light most favorable to the non-moving party. See, e.g., Rocks v. Philadelphia, 868 F.2d

644, 645 (3d Cir.1989). The court need not determine whether the plaintiff will prevail, but whether the plaintiff can prove any set of facts entitling it to the relief sought. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### A. Law of the Case

 Although the HHS Opinion dealt solely with the HHS Motion to Dismiss, the ruling does impact the present Motion. The doctrine of the law of the case provides that when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. In re Continental Airlines, Inc., 279 F.3d 226, 232–33 (3d Cir. 2002). This rule promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." Id. at 233 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). Accordingly, to the extent that the current Motion raises issues decided in the HHS Opinion, we will follow our previous ruling.

In our prior Opinion, we found that HHS did not violate the Approval Order, FSQ Settlement, Management Agreement, Stipulation or Letter Agreement by entering into the U.S. Agreement, because paragraph 11 of the Stipulation specifically provided that "[t]his Stipulation is not intended to constitute a release, waiver or compromise of any claims against [the Debtors] under the False Claims Act." Thus, we concluded that the $19.1 million set-off allowed by the U.S. Agreement did not violate the Stipulation or any other agreement between the parties. While this set-off resulted in FSQ not receiving

---

**2.** Counts IV, VII and VIII do not implicate the Debtors and thus are not addressed by their Motion.

any compensation from HHS via the Debtors for services rendered during the Transition Period, we found that such an outcome did not violate the express terms of section 2.8(b)(i) of the Management Agreement. Accordingly, we concluded that FSQ had failed to state a cause of action against HHS under Counts I, II and IV.

### B. *The Debtors Motion to Dismiss*

■ The Debtors' Motion to Dismiss seeks dismissal of Counts I, II, III and VI. The Debtors similarly contend that these counts fail to state facts upon which relief can be granted. FSQ asserts, however, that the Debtors remain in default of their obligations because the Debtors are obligated to pay FSQ for services rendered at the Transfer Facilities.

#### 1. *The HHS Opinion*

The Debtors rely on the HHS Opinion's finding that they did not violate the Management Agreement by entering into the U.S. Agreement. That finding, however, was more limited in its scope. In the HHS Opinion, we concluded that HHS did not violate any of the agreements between the parties by entering into the U.S. Agreement. The Stipulation specifically provided that HHS could seek claims against the Debtor arising under the False Claims Act. Therefore, we concluded that HHS did not violate any obligation simply by entering into the U.S. Agreement. Remaining before the Court, however, is whether the Debtors' subsequent action (or lack thereof) violated any specific obligations that the Debtor has to FSQ under the numerous agreements between the parties.

Following the HHS Opinion, FSQ asserted in its Further Memorandum that, even though the $19.1 million set-off by HHS may have been permitted by section 2.8(b)(i) of the Management Agreement,

the Debtors are now not in compliance with section 2.8(c) of the Management Agreement. Section 2.8(c) provides in pertinent part that:

"If and to the extent that there shall be a reduction (a *'Reduction'*) in the amount to be paid on any account receivable due to [Debtors] by a Medicaid program or the Medicare program for services rendered at any Facility from and after the Effective Time (an *'IHS Government Receivable'*) by reason of any withholding, freeze, restriction, offset or recoupment applied against such IHS Government Receivable for an amount payable ... with respect to services provided on or prior to the Effective Time (a *'Pre–Effective Third Party Payor Claim'*), then [FSQ] shall have a claim against the [Debtors] (a *'Reduction Claim'*)".

(Management Agreement § 2.8(c)). FSQ contends that the U.S. Agreement created a Reduction Claim for which the Debtors are liable under this provision.

#### 2. *The Letter Agreement*

The Debtors contend that the Letter Agreement with FSQ establishes that they are not in breach of any obligation owed to FSQ. Specifically, the Debtors assert that the Letter Agreement precludes FSQ from raising the Reduction Claim against them. The Letter Agreement provides:

(1) ... Except for [the PIP Payments], the payment of $1,450,000 shall constitute a full and final reconciliation of all Medicare and Medicaid funds previously, or that may be received in the future, by [FSQ] or [the Debtors] under the [FSQ] Agreement.

(2) ... [the Debtors] will deliver that portion of any [PIP Payment] ... to [FSQ], without counterclaim or set off, immediately upon its receipt.

(Letter Agreement ¶ 1 & 2). As a result of these provisions, the Debtors contend that they have no further obligation to FSQ unless and until they *receive* monies. Since they have not, and will not, receive monies from HHS, the Debtors contend that they are not in breach.

Since the Debtors are seeking a dismissal of the Complaint, they bear the burden of establishing that there are no facts which support the Complaint. *See, e.g., Wisnieswki*, 759 F.2d at 273. We find that the Debtors have not met this burden. There remain factual disputes regarding whether our determination is governed by the terms of the Management Agreement or the Letter Agreement. It is not clear that the Letter Agreement precludes FSQ from asserting the Reduction Claim. While the Letter Agreement provides that it is the final reconciliation of various accounts pursuant to the FSQ Settlement; it fails to provide that it is a reconciliation of *all* accounts or obligations owed between the parties. Accordingly, we find that the Debtors have not met their burden under Rule 12(b)(6). Therefore, we must deny the Motion to Dismiss Counts I, II, III and VI.

### C. *Unjust Enrichment*

 In the HHS Opinion, we found that Count V (Unjust Enrichment) failed to state a cause of action. Unjust enrichment may be found only where there is no written agreement binding the parties. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987). Since there was a written agreement, no cause of action for unjust enrichment could be stated. As a result of this finding, we must similarly conclude here that Count V fails to state a cause of action for unjust enrichment against the Debtors.

### IV. *CONCLUSION*

For the foregoing reasons we grant in part and deny in part the Debtors' Motion to Dismiss.

An appropriate Order is attached.

### *AMENDED ORDER*

AND NOW, this 23d day of **MARCH 2004**, upon consideration of the Motion of IHS Liquidating LLC for reconsideration, amendment, and/or clarification of the Court's Order entered on February 24, 2004 [Adv. Docket No. 60], denying the Defendant's Motion to Dismiss the First Amended Complaint filed by Five Star Quality Care, Inc., and the Debtors' Motion to Dismiss for failure to state a claim upon which relief may be granted, it is hereby

**ORDERED** that the Motion to Dismiss is **DENIED** as to Counts I, II, III and VI, and it is further;

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Count V.